## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY E. PERELMAN, as a Participant in the General Refractories Company Pension Plan for Salaried Employees,<br><br>       Plaintiff,<br><br>   v.<br><br>RAYMOND G. PERELMAN,<br>RONALD O. PERELMAN,<br>JASON GUZEK and<br>GENERAL REFRACTORIES COMPANY,<br><br>       Defendants. | Civ. A. No. 2:10-5622 (JP) |

## SECOND AMENDED COMPLAINT

Jeffrey E. Perelman ("Perelman" or "Plaintiff") as a participant in the General Refractories Company Pension Plan for Salaried Employees, a/k/a the Grefco Minerals, Inc. Pension Plan for Salaried Employees (the "Pension Plan"), by and through his undersigned attorneys, brings this Second Amended Complaint and alleges as follows:

## INTRODUCTION

1. Perelman brings this action in his capacity as a participant and on behalf of the Pension Plan against Raymond Perelman, Jason Guzek and General Refractories Company, and Ronald Perelman seeking relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. § 1001, *et seq.*, 29 U.S.C. §§ 1024-1027, 29 U.S.C. § 1104, 29 U.S.C. §1105, 29 U.S.C. § 1106 and 29 U.S.C. § 1109 for losses suffered by the Pension Plan and/or any profits realized as a result of breaches of fiduciary duties by Raymond Perelman in his capacity as a trustee and Plan Administrator of the Pension Plan. Perelman seeks this relief for Raymond Perelman's misconduct in causing the Pension Plan to engage in

prohibited party-in-interest transactions and his concealment of those transactions from participants of the Pension Plan. More specifically., Raymond Perelman imprudently directed the investment of a large percentage of the Pension Plan's assets in bonds issued by Revlon Consumer Products Corporation ("Revlon Bonds"), a subsidiary of Revlon, Inc. (together with Revlon Consumer Products Corporation, "Revlon"), a company owned and controlled by his son Ronald Perelman. On information and belief, at least a portion of the bonds were subsequently converted into stock, and Raymond Perelman gave control of that stock - now Pension Plan assets - to Ronald. Rather than being directed by sound fiduciary principles to protect the Pension Plan's assets, Raymond Perelman made these investments at Ronald Perelman's behest, to make additional capital available to Revlon. Further, throughout the relevant time period, Raymond Perelman concealed the nature of these investments from participants of the Pension Plan.

2.      Plaintiff also seeks relief pursuant to 29 U.S.C. §§ 1024-1027, 29 U.S.C. § 1104, 29U.S.C. § 1105 and 29 U.S.C. § 1109 for losses suffered by the Pension Plan and/or any profits resulting from breaches of fiduciary duties by Jason Guzek and General Refractories Company in their capacity as Plan Administrators of the Pension Plan by (a) directing the investment of a large percentage of the Pension Plan's assets in the corporate bonds of Revlon, which on information and belief, were later converted to Revlon stock controlled by Ronald Perelman; (b) failing to update and maintain plan documents and knowingly omitting material facts from plan documents, and (c) failing, as a co-fiduciary, to make a reasonable effort to remedy Raymond Perelman's breaches of fiduciary duties by not pursuing actions against Raymond Perelman for his improper use of Pension Plan assets in prohibited party-in-interest transactions.

FIRM:16154761v1
133218.00602/22031908v.2

3.      Plaintiff seeks relief pursuant to 29 U.S.C. § 1104, 29 U.S.C. § 1105, 29 U.S.C. § 1106 and 29 U.S.C. § 1109 for losses suffered by the Pension Plan and/or any profits realized as a result of (a) Ronald Perelman's knowing participation, as reflected in his signature on a March 2004 Voting Agreement, in prohibited party-in-interest transactions whereby (i) Pension Plan assets were improperly used to purchase corporate bonds of Revlon Consumer Products at least a portion of which, on information and belief, were subsequently converted to Revlon stock, and (ii) Ronald Perelman undertook full and unfettered voting control of Pension Plan assets in Revlon, (b) Ronald Perelman's breach of fiduciary duty by (i) his exercise of full and unfettered control over Pension Plan assets that were invested in Revlon stock, a company that he owned and controlled and (ii) permitting the Pension Plan to continue to invest in Revlon, a substantively over-leveraged company and (c) Ronald Perelman's liability as a co-fiduciary when he knew of breaches of duty by Raymond Perelman and made no efforts to remedy same.

4.      Plaintiff seeks relief pursuant to 29 U.S.C.  Sec. 1104, 29 U.S.C. Sec. 1105, 29 U.S.C.1106 and 29 U.S.C. Sec. 1109,  (a) to have Raymond Perelman and Jason Guzek removed as trustee and administrator of the Pension Plan; (b) to have Raymond Perelman and Jason Guzek permanently enjoined from ever serving as a fiduciary with regard to any employee benefit plan subject to ERISA; (c) to have an independent trustee appointed for the Pension Plan; and (d) to direct the independent trustee to hire an independent auditor to conduct an audit of the Pension Plan for Plan Years 2002 through 2010 to ascertain the veracity of information contained in the Forms 5500 for Plan Years 2002-2010.

5.      Plaintiff seeks relief pursuant to 29 U.S.C.  Sec 1104, 29 U.S.C. Sec 1105, 29 U.S.C. Sec. 1106 and 29 U.S.C. Sec 1109 to have those provisions of the Pension Plan and/or the General Refractories Pension Plan for Salaried Employees Trust Agreement which purport to

3

relieve and/or to indemnify the Trustee from responsibility or liability for any obligation or duty owed under ERISA to be declared null and void as against public policy and violative of ERISA.

### JURISDICTION

6.     This Court has jurisdiction pursuant to 29 U.S.C. § 1132(a)(3).

### VENUE

7.     Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in the Eastern District of Pennsylvania with its principal office located in Bala Cynwyd, Pennsylvania.

### PARTIES

8.     The Plaintiff is, and has been since approximately 1985, a participant in the Pension Plan within the meaning of 29 U.S.C. § 1002(7).

9.     The Pension Plan is an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2)(A).

10.     The Forms 5500 filed with the Department of Labor on behalf of the Pension Plan for Plan years 2003, 2004, 2005 and 2009 were executed by Defendant Raymond G. Perelman ("Raymond Perelman"), as the Plan Administrator, within the meaning of 29 U.S.C. §1002(16)(A).

11.     The Pension Plan document, amended and restated, effective January 1, 1997 states, in pertinent part, that the trustees of the Pension Plan "... shall be the named fiduciary with respect to management and control of Plan assets held by it and shall have exclusive and sole responsibility for the custody and investment thereof in accordance with the Trust Agreement."

12.     The General Refractories Company Pension Plan for Salaried Employees Trust Agreement (the "Trust Agreement"), made and entered into on November 1, 2003, stated that the trustee of the Pension Plan was Raymond Perelman.

4

13.     Upon information and belief, Raymond Perelman served as trustee of the Pension Plan for at least plan years 2003 through 2009.

14.     Raymond Perelman, as the Plan Administrator and/or trustee of the Pension Plan, exercised discretionary authority or discretionary control respecting management of the Pension Plan, exercised authority or control over the management or disposition of the Pension Plan's assets, had discretionary authority or responsibility in the administration of the Pension Plan, and therefore was a fiduciary, within the meaning of 29 U.S.C. § 1002(21)(A), to the Pension Plan.

15.     Raymond Perelman, as a fiduciary of the Pension Plan, was a party-in-interest within the meaning of 29 U.S.C. § 1002(14)(A).

16.     Defendant Ronald O. Perelman ("Ronald Perelman") is the son of Raymond Perelman, and has since at least 1997 been the controlling shareholder of Revlon.

17.     Ronald Perelman., as the son of Raymond Perelman, is a lineal descendant of Raymond Perelman and therefore his relative within the meaning of 29 U.S.C. § 1002(15).

18.     Ronald Perelman, in accordance with a letter agreement dated March 15, 2004 (the "March 15, 2004 Letter Agreement") with Raymond and Ruth Perelman, which he executed on behalf of Mafco Holdings, Inc. a company that he owned and/or controlled, knowingly and intentionally became the beneficial owner of the shares of Revlon stock owned by the Pension Plan by which he undertook full and unfettered power to vote all Revlon stock owned by the Pension Plan.

19.     Ronald Perelman, by undertaking full and unfettered voting control of all the Revlon stock owned by the Pension Plan pursuant to the March 15, 2004 Letter Agreement with Raymond and Ruth Perelman, which he executed on behalf of Mafco Holdings, Inc. a company he wholly owned, exercised authority and control over the management or disposition of the

5

Pension Plan's assets, and therefore served as a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A).

20.    Ronald Perelman, both as a lineal descendant of a fiduciary and as a fiduciary of the Pension Plan, was a party-in-interest within the meaning of 29 U.S.C. § 1002(14)(A).

21.    The Forms 5500 filed with the Department of Labor on behalf of the Pension Plan for plan years 2006, 2007 and 2008 were executed by Defendant Jason Guzek ("Jason Guzek") as the Plan Administrator of the Pension Plan within the meaning of 29 U.S.C. § 1002(16)(A).

22.    Jason Guzek, as the Plan Administrator of the Pension Plan, exercised discretionary authority or discretionary control respecting management of the Pension Plan, exercised authority or control over the management or disposition of the Pension Plan's assets, had discretionary authority or responsibility in the administration of the Pension Plan, and therefore was a fiduciary, within the meaning of 29 U.S.C. § 1002(21)(A), to the Pension Plan.

23.    Jason Guzek, as a fiduciary of the Pension Plan, was a party-in-interest within the meaning of 29 U.S.C. § 1002(14)(A).

24.    Upon information and belief, Defendant General Refractories Company ("General Refractories Company") has represented that it served as the Administrator of the Pension Plan within the meaning of 29 U.S.C. § 1002(16)(A).

25.    General Refractories Company, as the Plan Administrator of the Pension Plan, exercised discretionary authority or discretionary control respecting management of the Pension Plan, exercised authority or control over the management or disposition of the Pension Plan's assets, had discretionary authority or responsibility in the administration of the Pension Plan, and therefore was a fiduciary, within the meaning of 29 U.S.C. § 1002(21 )(A), to the Pension Plan.

FIRM:16154761v1
133218.00602/22031908v.2

26.     General Refractories Company, as a fiduciary of the Pension Plan, was a party-in-interest within the meaning of 29 U.S.C. § 1002(14)(A).

## BACKGROUND

## THE FORMS 5500 AND THE INDEPENDENT AUDITORS' REPORTS

## FORM 5500 FOR PLAN YEAR 2003

27.     The Form 5500 filed with the Department of Labor on behalf of the Pension Plan for plan year 2003 (the "2003 Form 5500") was executed on October 13, 2004 by Raymond Perelman as Plan Administrator.

28.     The 2003 Form 5500 reflected that the market value of Pension Plan assets at the end of plan year 2003 was $11,213,777.

29.     The Independent Auditor's Report dated October 8, 2004 appended to and made a part of the 2003 Form 5500 reflected that the market value of Pension Plan assets at the end of plan year 2002 was $8,201,143.

30.     The Independent Auditor's Report dated October 8, 2004 appended to and made a part of the 2003 Form 5500 reflected an investment of Pension Plan assets in the amount of $2,088,000 in Revlon Bonds at the end of plan year 2002.

31.     The Independent Auditor's Report dated October 8, 2004 appended to and made a part of the 2003 Form 5500 reflected an investment of Pension Plan assets in the amount of $1,870,500 in Revlon Bonds at the end of plan year 2003.

32.     Despite that investment, Schedule H of the 2003 Form 5500 inaccurately reflected that $11,213,777 representing 100% of the value of Plan assets were invested in "master trust accounts."

FIRM:16154761v1
133218.00602/22031908v.2

33.     The Notes to the Independent Auditor's Report dated October 8, 2004 appended to and made a part of the 2003 Form 5500 did not identify any party-in-interest transactions, in that it failed to indicate that a controlling shareholder of Revlon, a company in which the Pension Plan held corporate bonds as an investment, was a lineal descendent of the trustee of the Pension Plan and did not indicate that those transactions qualified as party-in-interest transactions.

34.     The 2003 Form 5500 did not reflect that any fees were paid to a financial advisor/ consultant as a service provider to the Pension Plan.

35.     Upon information and belief, the Trustee of the Pension Plan failed to utilize the services of a financial advisor/consultant to analyze and/or monitor the investment in the corporate bonds of Revlon Consumer Products.

36.     Upon information and belief, the Trustee of the Pension Plan failed to conduct any investigation into the merits of the transaction by which the Pension Plan invested in corporate bonds of Revlon Consumer Products or to monitor the investment during Plan Year 2003.

37.     In 2003 Moody's Rating Service indicated that the majority of their ratings for Revlon bonds  were between Caa1 and C which reflected (a) obligations judged to be of poor standing and subject to very high credit risk and (b) obligations rated as the lowest class of bonds and typically in default with little prospect of recovery of principal or interest.

## FORM 5500 FOR PLAN YEAR 2004

38.     The Form 5500 filed with the Department of Labor on behalf of the Pension Plan for Plan Year 2004 was executed on October 13, 2005 by Raymond Perelman as Plan Administrator.

39.     The 2004 Form 5500 reflected that the market value of Pension Plan assets at the end of Plan Year 2004 was $13,775,652.

40.     The Independent Auditor's Report dated September 27, 2005 appended to and made a part of the 2004 Form 5500 reflected an investment of Pension Plan assets in the amount of $4,889,752 in corporate bonds of Revlon Consumer Products, Corp. at the end of Plan Year 2004.

41.     Despite that investment, Schedule H of the 2004 Form 5500 inaccurately reflected that $13,775,652 representing 100% of the value of Plan assets were invested in "master trust accounts."

42.     Schedule H, Part IV, Line 4J "Schedule of Reportable Transactions" included as part of the Independent Auditor's Report dated September 27, 2005 appended to and made a part of the 2004 Form 5500 stated that the Pension Plan made one purchase of Revlon Bonds in the amount of $1,211,000 during plan year 2004.

43.     The Notes to the Independent Auditor's Report dated September 27, 2005 appended to and made a part of the 2004 Form 5500 did not identify any party-in-interest transactions, by failing to indicate that Ronald Perelman, the controlling shareholder of Revlon, a company in which the Pension Plan held corporate bonds as an investment, was a lineal descendent of the trustee of the Pension Plan, that pursuant to the March 15, 2004 Letter Agreement Ronald Perelman had become a fiduciary of the Pension Plan, and that those transactions qualified as party-in-interest transactions.

44.     Schedule H, Part IV, Line D of the 2004 Form 5500 inquired, "[w]ere there any nonexempt transactions with any party-in-interest?"

45.     Schedule H, Part IV, Line D of the 2004 Form 5500 was responded to by the checking of a box entitled "No," which contradicted the "Schedule of Reportable Transactions," which reflected that there had been a party-in-interest transaction during plan year 2004.

FIRM:16154761v1
133218.00602/22031908v.2

46.     The 2004 Form 5500 did not reflect that any fees were paid to a financial advisor/consultant as a service provider to the Pension Plan.

47.     Upon information and belief, the Trustee of the Pension Plan failed to utilize the services of a financial advisor/consultant to analyze and/ or monitor the previous investment of the Pension Plan  in the corporate bonds of Revlon Consumer Products.

48.     Upon information and belief, the Trustee of the Pension Plan failed to utilize the services of a financial advisor/consultant to analyze the Pension Plan's purchase of corporate bonds of Revlon Consumer Products in the amount of $1,211,000 during Plan Year 2004.

49.     In 2004 Moody's Rating Service indicated that the majority of their ratings for Revlon corporate bonds were between Caa1 and C which reflected (a) obligations judged to be of poor standing and subject to very high credit risk and (b) rated as the lowest class of bonds and typically in default with little prospect of recovery of principal or interest.

### FORM 5500 FOR PLAN YEAR 2005

50.     The Form 5500 filed with the Department of Labor on behalf of the Pension Plan for plan year 2005 (the "2005 Form 5500") was executed on October 3, 2006 by Raymond Perelman as Plan Administrator.

51.     The 2005 Form 5500 reflected that the market value of Pension Plan assets at the end of plan year 2005 was $13,615,500.

52.     The Independent Auditor's Report dated September 28, 2006 appended to and made a part of the 2005 Form 5500 reflected an investment of Pension Plan assets in the amount of $5,245,271 in Revlon Bonds at the end of plan year 2005.

53.     Despite that investment, Schedule H of the 2005 Form 5500 inaccurately reflected that $13,615,500 representing 100% of the value of Plan assets were invested in "registered investment companies (e.g. mutual funds)."

10

54.     The Notes to the Independent Auditor's Report dated September 28, 2006 appended to and made a part of the 2005 Form 5500 did not identify any party-in-interest transactions, by failing to indicate that Ronald Perelman, the controlling shareholder of Revlon, a company in which the Pension Plan held corporate bonds as an investment, was a lineal descendant of the trustee of the Pension Plan, that pursuant to the March 15, 2004 Letter Agreement Ronald Perelman had become a fiduciary of the Pension Plan, and that those transactions qualified as party-in-interest transactions.

55.     According to the Independent Auditor's Report dated September 28, 2006 appended to and made a part of the 2005 Form 5500 at the end of plan year 2005, the investment of Pension Plan assets in Revlon Bonds represented almost 38% of the total value of the assets of the Pension Plan.

56.     The 2005 Form 5500 did not reflect that any fees were paid to a financial advisor/consultant as a service provider to the Pension Plan during Plan Year 2005.

57.     Upon information and belief, the Trustee of the Pension Plan failed to utilize the services of a financial advisor/consultant to analyze and/or to monitor the investment in the corporate bonds of Revlon Consumer Products during Plan Year 2005.

58.     Upon information and belief, the Trustee of the Pension Plan failed to conduct any analysis and/or monitor the investment in the corporate bonds of Revlon Consumer Products during Plan Year 2005.

## FORM 5500 FOR PLAN YEAR 2006

59.     The Form 5500 filed with the  Department of Labor on October 12, 2007, on behalf of the Pension Plan for plan year 2006 (the "2006 Form 5500") was executed by Jason Guzek as Plan Administrator rather than Raymond Perelman.

FIRM:16154761v1
133218.00602/22031908v.2

60.     The 2006 Form 5500 reflected that the market value of Pension Plan assets at the end of plan year 2006 was $13,932,245.

61.     The Independent Auditor's Report dated October 5, 2007 appended to and made a part of the 2006 Form 5500 reflected an investment of Pension Plan assets in the amount $3,582,714 in Revlon Bonds at the end of plan year 2006.

62.     Despite that investment, Schedule H of the 2006 Form 5500 inaccurately reflected that $13,932,245 representing 100% of the value of Plan assets were invested in "registered investment companies (e.g. mutual funds)."

63.     Note 7 to the Independent Auditor's Report dated October 5, 2007 appended to and made a part of the 2006 Form 5500 stated that Revlon Bonds were investments held by the Pension Plan, that a controlling shareholder of Revlon was a lineal descendant to the trustee of the Pension Plan and that those transactions qualified as party-in interest transactions.

64.     However, Note 7 to the Independent Auditor's Report dated October 5, 2007 appended to and made a part of the 2006 Form 5500 did not indicate that Ronald Perelman, pursuant to the March 15, 2004 Letter Agreement, had become a fiduciary of the Pension Plan.

65.     The Independent Auditors' Reports appended to and made a part of the Forms 5500 for plan years 2003 and 2004 reflected that Cogen Sklar LLP performed the independent audits for those plan years.

66.     Upon information and belief, Cogen Sklar LLP is the predecessor entity of Morison Cogen LLP.

67.     The Independent Auditors' Reports appended to and made a part of Forms 5500 for plan years 2005 through 2009 reflected that Morison Cogen LLP performed the independent audits for those plan years.

12

68.     A review of the Independent Auditors' Reports by Cogen Sklar LLP and its successor Morison Cogen LLP appended to and made a part of the Forms 5500 for the plan years 2003 through 2009, indicated that the first disclosure Revlon Bonds were investments held by the Pension Plan, a controlling shareholder of Revlon was a lineal descendant of the trustee of the Pension Plan, and those transactions qualified as party-in interest transactions was made in Note 7 to the Independent Auditor's Report dated October 5, 2007 appended to and made a part of the 2006 Form 5500.

69.     The 2006 Form 5500 did not reflect that any fees were paid to a financial adviser/consultant as a service provider to the Pension Plan during Plan Year 2006.

70.     Upon information and belief, the Trustee of the Pension Plan failed to utilize the services of a financial advisor/consultant to analyze and/or monitor the investment in the corporate bonds of Revlon Consumer Products during Plan Year 2006..

71.     Upon information and belief, the Trustee of the Pension Plan failed to conduct any analysis of or to monitor the investment by the Pension Plan into corporate bonds of Revlon Consumer Products during Plan Year 2006.

72.     Raymond Perelman ceased to be noted as Plan Administrator on the 2006 Form 5500 filed with the Department of Labor because the 2006 Form 5500 was executed by Jason Guzek as Plan Administrator.

73.     The Form 5500 filed with the Department of Labor on behalf of the Pension Plan for plan year 2007 (the "2007 Form 5500") was executed on October 12, 2008 by Jason Guzek as Plan Administrator.

74.     In 2006 Moody's Investment Ratings Services indicated that the Speculative Grade Liquidity Rating ("SG") for Revlon Consumer Products was SGL-4.

13

75.     A rating of SGL-4 means that the Company possesses weak liquidity and relies on external sources of financing and availability of that financing is highly uncertain.

### FORM 5500 FOR PLAN YEAR 2007

76.     The Form 5500 filed with the Department of Labor on behalf of the Pension Plan was executed on October 12, 2008 by Jason Guzek as Plan Administrator.

77.     The 2007 Form 5500 reflected that the market value of Pension Plan assets at the end of plan year 2007 was $13,408,984.

78.     The Independent Auditor's Report dated September 27, 2008 appended to and made a part of the 2007 Form 5500 reflected an investment of Pension Plan assets in the amount of $2,786,837 in Revlon Bonds at the end of plan year 2007.

79.     Despite that investment, Schedule H of the 2007 Form 5500 inaccurately reflected that $13,408,984 representing 100% of the value of Plan assets were invested in "registered investment companies (e.g. mutual funds)."

80.     Note 6 to the Independent Auditor's Report dated September 27, 2008 appended to and made part of the 2007 Form 5500 revealed that Revlon Bonds were investments held by the Pension Plan, that a controlling shareholder of Revlon was a lineal descendant to the trustee of the Pension Plan and that those transactions qualified as party-in interest transactions.

81.     However, Note 6 to the Independent Auditor's Report dated September 27, 2008 appended to and made part of the 2007 Form 5500 did not indicate that Ronald Perelman, pursuant to the March 15, 2004 Letter Agreement, had become a fiduciary of the Pension Plan.

82.     The 2007 Form 5500 did not reflect that any fees were paid to a financial advisor/consultant as a service provider to the Pension Plan during Plan Year 2007.

FIRM:16154761v1
133218.00602/22031908v.2

83.     Upon information and belief, the Trustee of the Pension Plan failed to utilize the services of a financial advisor/consultant to analyze and/or to monitor the investment in the corporate bonds of Revlon Consumer Products during Plan Year 2007.

84.     Upon information and belief, the Trustee of the Pension Plan failed to analyze and/or monitor the investment of the Pension Plan in the corporate bonds of Revlon Consumer Products during Plan Year 2007.

85.     As of December 4, 2007 Moody's Rating Service indicated that Revlon Consumer Products' SGL rating was SGL-4.

86.     A rating of SGL-4 is the lowest of the four SGL ratings and indicates that the company possesses weak liquidity, rely on external sources of financing and the availability of that financing is highly uncertain.

87.     The SGL rating looks to a company's ability to generate cash from internal sources and the availability of external sources of funding in relation to its cash obligations over the coming 12 months.

88.     In addition, as of December 4, 2007, Moody's rated the $167,000,000 of the 8 5/8% Senior Subordinated Notes with a maturity date of February 1, 2008 at Caa3, of poor standing and subject to very high credit risk.

## FORM 5500 FOR PLAN YEAR 2008

89.     The Form 5500 filed with the Department of Labor on behalf of the Pension Plan for plan year 2008 (the "2008 Form 5500") was executed on October 12, 2009 by Jason Guzek as Plan Administrator.

90.     The 2008 Form 5500 reflected that the market value of Pension Plan assets at the end of plan year 2008 was $11,111,634.

15

91.     The Independent Auditor's Report dated September 28, 2009 appended to and made a part of the 2008 Form 5500 reflected an investment of Pension Plan assets in the amount of $2,897,220 in Revlon Bonds at the end of plan year 2008.

92.     Despite that investment, Schedule H of the 2008 Form 5500 inaccurately reflected that $11,111,694 representing 100% of the value of  Plan assets were invested in "registered investment companies (e.gl mutual funds)."

93.     Note 7 to the Independent Auditor's Report dated September 28, 2009 appended to and made a part of the 2008 Form 5500 revealed that Revlon Bonds were investments held by the Pension Plan, that a controlling shareholder of Revlon was a lineal descendant to the trustee of the Pension Plan and that those transactions qualified as party-in interest transactions.

94.     However, Note 7 to the Independent Auditor's Report dated September 28, 2009 appended to and made a part of the 2008 Form 5500 did not indicate that Ronald Perelman, pursuant to the March 15, 2004 Letter Agreement, had become a fiduciary of the Pension Plan.

95.     The 2008 Form 5500 did not reflect that any fees were paid to a financial advisor/consultant as a service provider to the Pension Plan during Plan Year 2008.

96.     Upon information and belief, the Trustee of the Pension Plan failed to utilize the services of a financial advisor/consultant to analyze and/or monitor the investment in the corporate bonds of Revlon Consumer Products during Plan Year 2008.

97.     Upon information and belief, the Trustee of the Pension Plan failed to analyze and/or monitor the investment in the corporate bonds of Revlon Consumer Products during Plan Year 2008.

98.     The Independent Auditor's Report for Plan Year 2008 evaluated the corporate bonds of Revlon Consumer Products and the other assets of the Pension Plan utilizing the Fair Value Measurement Standard.

99.     The Independent Auditor's Report for Plan Year 2008 in utilizing the Fair Value Measurement Standard determined that 100% of the assets of the Pension Plan were on Level 1, the most reliable of the three levels of Fair Value Measurement.

100.    Level 1 of the Fair Value Measurement refers to quoted prices in active markets for identical assets that the Pension Plan has the ability to assess.

### FORM 5500 FOR PLAN YEAR 2009

101.    The Form 5500 filed with the Department of Labor on behalf of the Pension Plan for plan year 2009 (the "2009 Form 5500") was executed on October 14, 2010 by Raymond Perelman as Plan Administrator.

102.    The 2009 Form 5500 reflected that the market value of Pension Plan assets at the end of plan year 2009 was $12,980,603.

103.    The Independent Auditor's Report dated October 5, 2010 which was filed with the Form 5500 for Plan Year 2009 did not identify the assets of the Pension Plan and did not indicate the quantum of each asset.

104.    Schedule H, Part III, Line (a) of the 2009 Form 5500 indicated by the checking of a box entitled "Disclaimer" that the opinion of the independent auditor was disclaimed.

105.    The Independent Auditor's Report dated October 5, 2010 appended to and made a part of the 2009 Form 5500 did not contain any of the notes to the Independent Auditor's Report or explain that the opinion of the independent auditors was disclaimed.

106.    During discovery, a different Independent Auditor's Report dated October 5, 2010 was provided to Plaintiff bearing Bates Stamp Nos. GR000086-GR000098. ("Second Independent Auditor's Report for Plan Year 2009").

107.    The Second Independent Auditor's Report for Plan Year 2009 reflected an investment of Pension Plan assets in the amount of $2,697,220 in a "corporate note receivable Revlon Consumer Products."

108.    Despite that investment, Schedule H of the 2009 Form 5500 inaccurately reflected that $12,980,603 representing 100% of the value of Plan assets were invested in "registered investment companies (e.g. mutual funds)."

109.    Upon information and belief the Second Independent Auditor's Report for Plan Year 2009 was not filed at the Department of Labor with the Form 5500 for Plan Year 2009.

110.    The Second Independent Auditor's Report for Plan Year 2009 contradicted information contained in the Independent Auditor's Report for Plan Year which had been  filed with the Form 5500 for Plan Year 2008.

111.    The Second Independent Auditor's Report for Plan Year 2009 changed the characterization of the December 31, 2008 investment from "corporate bonds" of Revlon Consumer Products to "corporate note receivable Revlon Consumer Products" without providing an explanation of or even reference the retroactive re-characterization of the investment.

112.    Additionally, the Second Independent Auditor's Report for Plan Year 2009 retroactively downgraded the Fair Value Measurement of the Revlon investment as of December 31, 2008 from Level 1 to Level 3.

FIRM:16154761v1
133218.00602/22031908v.2

113.    In the Fair Value Measurement, Level 3 is the least reliable to three levels, and is normally characterized as having "unobservable inputs that are supported by little or no market activity and that are significant to the fair value of the assets or liabilities."

114.    The Second Independent Auditor's Report for Plan Year 2009 did not provide any explanation for the retroactive re-characterization of the investment in Revlon as of December 31, 2008 or even reference the change.

115.    The re-characterization of the December 31, 2008 investment in Revlon as having been a "corporate note receivable Revlon Consumer Products" contained in the Second Independent Auditor's Report for Plan Year 2009 was false.

116.    In truth, the Pension Plan had invested $2,737,707 in a Participation Agreement which had been executed on February 1, 2008 between MacAndrews & Forbes Holdings, Inc. and Raymond Perelman as trustee of the Pension Plan.

117.    The terms of the Participation Agreement provided the Pension Plan with an undivided interest equal to $2,737,707 in a Loan Agreement entitled "MacAndrews & Forbes Holdings, Inc. Senior Subordinated Terms Loan Agreement" ("Senior Subordinated Loan Agreement").

118.    The Senior Subordinated Loan Agreement was dated January 30, 2008.

119.    The parties to the Senior Subordinated Loan Agreement were MacAndrews & Forbes Holdings, Inc. and Revlon Consumer Products.

120.    The terms of the Senior Subordinated Loan Agreement provided that MacAndrews & Forbes Holdings, Inc. would loan Revlon Consumer Products Corporation the sum of $170,000,000.

121.    The terms of the Senior Subordinated Loan Agreement placed specific restrictions on Revlon Consumer Products Corporation about the use of the loan proceeds.

122.    The terms of the Senior Subordinated Loan Agreement required that Revlon Consumer Products Corporation disburse $167,738,000 of the $170,000,000 to the 8 5/8% Note Indenture Trustee to repay the outstanding principal amount due under the 8 5/8% notes on the maturity date of  February 1, 2008.

123.    The terms of the Senior Subordinated Loan Agreement also required Revlon Consumer Products Corporation to agree that MacAndrews & Forbes Holdings, Inc., could retain $2,550,000 as a non-refundable fee in connection with the financing that it had provided.

124.    Pursuant to the terms of the Senior Subordinated Loan Agreement, of the $170,000,000 Revlon Consumer Products Corporation could only disburse $72,000.

125.    Upon information and belief, without the loan from MacAndrews & Forbes Holdings, Revlon Consumer Products Corporation would have been unable to repay 8 5/8% Note holders on the maturity date of February 1, 2008.

126.    Upon information and belief, the failure of Revlon Consumer Products Corporation to repay principal and interest on the 8 5/8% Notes on the Maturity date of February 1, 2008 would have been an event of default.

127.    Upon information and belief, the failure of Revlon Consumer Products Corporation to repay principal and interest on the 8 5/8% Notes on the Maturity date of February 1, 2008 would have permitted the holders of the 8 5/8% Notes to avail themselves of all remedies as creditors of Revlon Consumer Products Corporation.

FIRM:16154761v1
133218.00602/22031908v.2

128.     The terms of the Participation Agreement executed by Raymond Perelman as Trustee of the Pension Plan stated that it was a non-recourse agreement which provided the Pension Plan with no protection for its investment.

129.     Additionally, the Senior Subordinated Loan Agreement was a subordinated unsecured obligation of Revlon Consumer Products Corporation.

130.     The 2008 Form 5500 did not reflect that any fees were paid to a financial advisor/consultant as a service provider to the Pension Plan during Plan Year 2008.

131.     Upon information and belief the Trustee of the Pension Plan failed to utilize the services of a financial advisor/consultant to analyze and/or monitor the investment by the Pension Fund in the Participation Agreement.

132.     Upon information and belief the Trustee of the Pension Plan failed to analyze and/or monitor the investment by the Pension Plan in the Participation Agreement.

133.     Upon information and belief, the principal owner of MacAndrews & Forbes Holdings, Inc. on February 1, 2008 was Ronald Perelman.

134.     Upon information and belief, the decision of Raymond Perelman as Trustee for the Pension Plan to invest in the Participation Agreement was not done to benefit the participants and beneficiaries in the Pension Plan.

135.      Upon information and belief, the decision of Raymond Perelman as Trustee for Trustee of the Pension Plan to invest in the Participation Agreement was done solely to benefit Revlon Consumer Products and his son, Ronald Perelman.

136.     The decision of Raymond Perelman as Trustee of the Pension Plan to invest in the Participation Agreement was imprudent and a violation of his fiduciary duties under ERISA.

21

FIRM:16154761v1
133218.00602/22031908v.2

137.    The decision of Raymond Perelman as Trustee of the Pension Plan to mischaracterize the February 1, 2008 investment in the Participation Agreement on the 2008 Form 5500 (Schedule H) as an investment in "registered investment companies (e.g. mutual funds)" and as an investment in "corporate bonds Revlon Consumer Products" (Independent Auditor's Report for Plan Year 2008 was done intentionally to mask the improper and imprudent investment in the non-recourse Participation Agreement.

138.    The decision of Raymond Perelman as Trustee of the Pension Plan to mischaracterize the February 1, 2008 investment in the Participation Agreement on the 2009 Form 5500 (Schedule H) as an investment in "registered investment companies ( e.gl mutual funds)" and as  an investment in a "corporate note receivable Revlon Consumer Products" (Second Independent Auditor's Report for Plan Year 2009 Bates GR000086-GR000098) was done intentionally to mask the improper and imprudent investment in the non-recourse Participation Agreement.

139.    By causing false and misleading information to be provided on the Forms 5500 for Plan Years 2008 and 2009, Raymond Perelman as Trustee of the Pension Plan violated his fiduciary duties to the Plaintiff and the other participants and beneficiaries of the Pension Plan.

140.    By causing  false and misleading information to be provided  on the Forms 5500 for Plan Years 2008 and 2009,  Raymond Perelman as Trustee of the Pension Plan violated 18 U.S.C. Sec. 1027.

**RAYMOND PERELMAN'S OWNERSHIP INTEREST IN REVLON AND THE FAILURE TO DISCLOSE IT ON PENSION PLAN DOCUMENTS**

141.    The Independent Auditor's Report dated October 8, 2004 appended to and made a part of the 2003 Form 5500 executed by Raymond Perelman on October 13, 2004 did not disclose that at least a portion of the Revlon Bonds were, on information and belief, converted

FIRM:16154761v1
133218.00602/22031908v.2

into stock held as assets of the Pension Plan, that a controlling shareholder of Revlon was a lineal descendant to the trustee of the Pension Plan, that pursuant to the March 15, 2004 Letter Agreement Ronald Perelman had become a fiduciary of the Pension Plan, that those transactions qualified as party-in-interest transactions, or that Raymond Perelman was the beneficial owner of 9.6% of the outstanding Class A common stock of Revlon.

142.    The Independent Auditor's Report dated September 27, 2005 appended to and made a part of the 2004 Form 5500 executed by Raymond Perelman on October 13, 2005 did not that at least a portion of the Revlon Bonds were, on information and belief, converted into stock held as assets of the Pension Plan, that a controlling shareholder of Revlon was a lineal descendant to the trustee of the Pension Plan, that pursuant to the March 15, 2004 Letter Agreement Ronald Perelman had become a fiduciary of the Pension Plan, that those transactions qualified as party-in-interest transactions, or that Raymond Perelman was the beneficial owner of 9.6% of the outstanding Class A common stock of Revlon.

143.    The Independent Auditor's Report dated September 28, 2006 appended to and made a part of the 2005 Form 5500 executed by Raymond Perelman on October 3, 2006 did not disclose that at least a portion of the Revlon Bonds were, on information and belief, converted into stock held as assets of the Pension Plan, that a controlling shareholder of Revlon was a lineal descendant to the trustee of the Pension Plan, that pursuant to the March 15, 2004 Letter Agreement Ronald Perelman had become a fiduciary of the Pension Plan, that those transactions qualified as party-in-interest transactions, or that Raymond Perelman was the beneficial owner of 9.6% of the outstanding Class A common stock of Revlon.

144.    Note 7 to the Independent Auditor's Report dated October 5, 2007 appended to and made a part of the 2006 Form 5500 executed by Jason Guzek on October 12, 2007 disclosed

that Revlon Bonds were investments held by the Pension Plan, that a controlling shareholder of Revlon was a lineal descendant to the trustee of the Pension Plan and that those transactions qualified as party-in-interest transactions, but it did not disclose that, on information and belief, at least a portion of the bonds had been converted to Revlon stock, that pursuant to the March 15, 2004 Letter Agreement Ronald Perelman had become a fiduciary of the Pension Plan, or that Raymond Perelman was the beneficial owner of 9.6% of the outstanding Class A common stock of Revlon.

145.   Note 7 to the Independent Auditor's Report dated September 27, 2008 appended to and made a part of the 2007 Form 5500 executed by Jason Guzek on October 12, 2008 disclosed that Revlon Bonds were investments held by the Pension Plan, that a controlling shareholder of Revlon was a lineal descendant to the trustee of the Pension Plan and that those transactions qualified as party-in-interest transactions, but it did not disclose that, on information and belief, at least a portion of the bonds had been converted to Revlon stock, that Raymond Perelman was the beneficial owner of 9.6% of the outstanding Class A common stock of Revlon, or that pursuant to the March 15, 2004 Letter Agreement Ronald Perelman had become a fiduciary of the Pension Plan.

146.   Note 7 to the Independent Auditor's Report dated September 28, 2009 appended to and made a part of the 2008 Form 5500 executed by Jason Guzek on October 12, 2009 disclosed that Revlon Bonds were investments held by the Pension Plan, that a controlling shareholder of Revlon was a lineal descendant to the trustee of the Pension Plan and that those transactions qualified as party-in-interest transactions, but it did not disclose that, on information and belief, at least a portion of the bonds had been converted to Revlon stock, that Raymond Perelman was the beneficial owner of 9.6% of the outstanding Class A common stock of Revlon,

FIRM:16154761v1
133218.00602/22031908v.2

or that pursuant to the March 15, 2004 Letter Agreement Ronald Perelman had become a fiduciary of the Pension Plan.

147.    A review of the Independent Auditors' Reports by Cogen Sklar LLP and its successor Morison Cogen LLP appended to and made a part of the Forms 5500 for the plan years 2003 through 2009, revealed that Note 7 to the Independent Auditor's Report dated October 5, 2007 appended to and made a part of the 2006 Form 5500 was the first disclosure that Revlon Bonds were investments held by the Pension Plan, that a controlling shareholder of Revlon was a lineal descendant of the trustee of the Pension Plan or that those transactions qualified as party-in-interest transactions.

148.    However, the Independent Auditors' Reports appended to and made a part of the Forms 5500 for the plan years 2004 through 2009 did not disclose that, on information and belief, at least a portion of the bonds had been converted to Revlon stock or that Ronald Perelman had become a fiduciary of the Pension Plan pursuant to the March 15, 2004 Letter Agreement.

149.    On March 25, 2004 Revlon filed Schedule 13G with the United States Securities and Exchange Commission (the "SEC") pursuant to Rule 13D-102 which stated that Raymond Perelman had an ownership interest in 32,599,371 (9.6%) shares of Revlon Class A common stock.

150.    In contrast, the 2003 Form 5500 filed with the Department of Labor on behalf of the Pension Plan executed on October 13, 2004 by Raymond Perelman as Plan Administrator did not disclose that Raymond Perelman was the beneficial owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G filed on March 25, 2004 by Revlon with the SEC.

FIRM:16154761v1
133218.00602/22031908v.2

151.    Similarly, the Independent Auditor's Report dated October 8, 2004 appended to and made a part of the 2003 Form 5500 did not disclose that Raymond Perelman was the beneficial owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G Filed on March 25, 2004 by Revlon with the SEC.

152.    The 2004 Form 5500 filed with the Department of Labor on behalf of the Pension Plan executed on October 13, 2005 by Raymond Perelman as Plan Administrator did not disclose that Raymond Perelman was the beneficial owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G filed on March 25, 2004 by Revlon with the SEC.

153.    The Independent Auditor's Report dated September 27, 2005 appended to and made a part of the 2004 Form 5500 did not disclose that Raymond Perelman was the beneficial owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G filed on March 25, 2004 by Revlon with the SEC.

154.    The 2005 Form 5500 filed with the Department of Labor on behalf of the Pension Plan executed on October 3, 2006 by Raymond Perelman as Plan Administrator did not disclose that Raymond Perelman was the beneficial owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G filed on March 25, 2004 by Revlon with the SEC.

155.    The Independent Auditor's Report dated September 28, 2006 appended to and made a part of the 2005 Form 5500 did not disclose that Raymond Perelman was the beneficial owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G filed on March 25, 2004 by Revlon with the SEC.

FIRM:16154761v1
133218.00602/22031908v.2

156.    The 2006 Form 5500 filed with the Department of Labor on behalf of the Pension Plan executed on October 12, 2007 by Jason Guzek as Plan Administrator did not disclose that Raymond Perelman was the beneficial owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G filed on March 25, 2004 by Revlon with the SEC.

157.    The Independent Auditor's Report dated October 5, 2007 appended to and made a part of the 2006 Form 5500 did not disclose that Raymond Perelman was the beneficial owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G filed on March 25, 2004 by Revlon with the SEC.

158.    The 2007 Form 5500 filed with the Department of Labor on behalf of the Pension Plan executed on October 12, 2008 by Jason Guzek as Plan Administrator, did not disclose that Raymond Perelman was the beneficial owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G filed on March 25, 2004 by Revlon with the SEC.

159.    The Independent Auditor's Report dated September 27, 2008 appended to and made a part of the 2007 Form 5500 did not disclose that Raymond Perelman was the beneficial owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G filed on March 25, 2004 by Revlon with the SEC.

160.    The 2008 Form 5500 filed with the Department of Labor on behalf of the Pension Plan executed on October 12, 2009 by Jason Guzek as Plan Administrator did not disclose that Raymond Perelman was the beneficial owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G filed on March 25, 2004 by Revlon with the SEC.

161.    The Independent Auditor's Report dated September 28, 2009 appended to and made a part of the 2008 Form 5500 did not disclose that Raymond Perelman was the beneficial

owner of 9.6% of Class A common stock, although this information was reported on Schedule 13G filed on March 25,2004 by Revlon with the SEC.

## THE FAILURE TO MAINTAIN UPDATED
## AND ACCURATE PENSION PLAN DOCUMENTS

162.   In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated April 30, 2010 from its counsel Dilworth Paxson LLP ("Dilworth Paxson") provided what it represented to be "[t]he latest Summary Plan Description for the Salaried Plan."

163.   The "latest Summary Plan Description" provided by the Pension Plan through its counsel Dilworth Paxson is dated November 9, 1994.

164.   Each of the Independent Auditors' Reports appended to and made a part of the Forms 5500 for the plan years 2003 through 2008 stated that the Pension Plan had been last amended on February 29, 1996.

165.   In contrast, the Independent Auditor's Report appended to and made a part of the 2009 Form 5500 stated that the Pension Plan had been last amended on January 1, 2002.

166.   In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated April 30, 2010 from its counsel Dilworth Paxson provided what it represented to be the "current operative plan document."

167.   The "current operative plan document" provided by the Pension Plan through its counsel Dilworth Paxson stated that it was last amended and restated as of January 1, 1997.

168.   In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated June 30, 2010 from its counsel Dilworth Paxson provided what it represented to be <u>all</u> amendments to the Pension Plan.

FIRM:16154761v1
133218.00602/22031908v.2

169.     The documents provided by the Pension Plan through its counsel Dilworth Paxson and represented to be all amendments to the Pension Plan stated that amendments had been made effective on January 1, 2002, July 1, 2007 and January 1, 2008.

170.     In contrast, none of the Independent Auditors' Reports appended to and made a part of the Forms 5500 for the plan years 2003 through 2008 stated that the Pension Plan was amended and restated effective January 1, 1997 or that the Pension Plan was amended effective January 1, 2002, July 1, 2007 and January 1, 2008.

171.     The Independent Auditor's Report appended to and made a part of the 2009 Form 5500 stated that the Pension Plan had been last amended on January 1, 2002, but failed to make any reference to the July 1, 2007 or January 1, 2008 amendments.

172.     In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated April 30, 2010 from its counsel Dilworth Paxson provided a document that it represented to be the Trust Agreement of the Pension Plan.

173.     The document represented by the Pension Plan through its counsel Dilworth Paxson to be the Trust Agreement stated that it was made and entered into on November 1, 2003.

174.     The language of the Trust Agreement further stated that a plan document was adopted concurrently with the Trust Agreement on November 1, 2003.

175.     Despite Plaintiff's requests by letter dated April 2, 2010, the Pension Plan failed to provide a plan document dated November 1, 2003.

176.     Schedule H, Part IV, Line D on the 2004 Form 5500 asks "[w]ere there any nonexempt transactions with any party-in-interest?"

177.     Schedule H, Part IV, Line D on the 2004 Form 5500 is answered by checking the "No" check box at the end of the question.

178.    Upon information and belief, Raymond Perelman, Jason Guzek and General Refractories Company as trustee and/or Plan Administrator administered the Pension Plan in violation of 29 U.S.C. §§ 1024-1027, 29 U.S.C. § 1104, 29 U.S.C. § 1106, 29 U.S.C. § 1109, by seeking to conceal their improper actions regarding investment of Pension Plan assets in Revlon Bonds and in violation of 18 U.S.C. § 1027 by misrepresenting and omitting material facts on the Forms 5500.

179.    The Pension Plan document, amended and restated, effective January 1, 1997 provided that the trustees of the Pension Plan "shall be the named fiduciary with respect to management and control of Plan assets held by it and shall have exclusive and sole responsibility for the custody and investment thereof in accordance with the Trust Agreement."

180.    The Trust Agreement identified Raymond Perelman as the sole trustee of the Pension Plan.

## RONALD PERELMAN'S CONTROL OF REVLON

181.    The Proxy Statement for Revlon filed April 30, 2001 with the SEC stated that Ronald Perelman was the controlling shareholder of Revlon owning 83.3% of Class A and Class B common stock.

182.    The Proxy Statement for Revlon filed April 29, 2002 with the SEC stated that Ronald Perelman was the controlling shareholder of Revlon owning 83.3% of Class A and Class B common stock.

183.    Item 12 to the Revlon Form 10-K filed March 21, 2003 with the SEC stated that Ronald Perelman was the controlling shareholder of Revlon owning 83.02% of Class A and Class B common stock.

FIRM:16154761v1
133218.00602/22031908v.2

184.    Item 12 to the Revlon Form 10-K filed February 20, 2004 with the SEC stated that Ronald Perelman was the controlling shareholder of Revlon owning 83.13% of Class A and Class B common stock.

185.    Revlon Form 10-K/A filed April 13, 2005 with the SEC stated that Ronald Perelman was the controlling shareholder of Revlon owning 59.93% of Class A and Class B common stock as of December 31, 2004.

## THE FINANCIAL CONDITION OF REVLON

186.    Item 6 to Form 10-K for the year ending 2002 filed by Revlon with the SEC on March 21, 2003 revealed that Revlon's total assets were $939,500,000 and that its long-term debt was $1,750,100,000 resulting in a total shareholder deficiency of $1,640,800,000.

187.    Item 6 to Form 10-K for the year ending 2003 filed by Revlon with the SEC on February 20, 2004 revealed that Revlon's total assets were $892,200,000 and that its long-term debt was $1,869,500,000 resulting in a total shareholder deficiency of $1,725,600,000.

188.    Item 6 to Form 10-K/A (amended Form 10-K) for the year ending 2004 filed by Revlon with the SEC on April 13, 2005 revealed that Revlon's total assets were $1,000,500,000 and that its total indebtedness was $1,355,300,000 resulting in a total shareholder deficiency of $1,019,900,000.

189.    Item 6 to Form 10-K for the year ending 2005 filed by Revlon with the SEC on March 2, 2006 revealed that Revlon's total assets were $1,043,700,000 and that its total indebtedness was $1,422,400,000 resulting in a total shareholder deficiency of $1,095,900,000.

190.    Item 6 to Form 10-K for the year ending 2006 filed by Revlon with the SEC on March 13, 2007 revealed that Revlon's total assets were $931,900,000 and that its total indebtedness was $1,511,400,000 resulting in a total shareholder deficiency of $1,229,800,000.

191.    Item 6 to Form 10-K for the year ending 2007 filed by Revlon with the SEC on March 5, 2008 revealed that Revlon's total assets were $889,300,000 and that its total indebtedness was $1,441,000,000 resulting in a total shareholder deficiency of $1,082,000,000.

192.    Item 6 to Form 10-K for the year ending 2008 filed by Revlon with the SEC on February 25, 2009 revealed that Revlon's total assets were $813,400,000 and that its total indebtedness was $1,329,600,000 resulting in a total shareholder deficiency of $1,112,800,000.

193.    Item 6 to Form 10-K for the year ending 2009 filed by Revlon with the SEC on February 25, 2010 revealed that Revlon's total assets were $794,200,000 and that its total indebtedness was $1,248,100,000 resulting in a total shareholder deficiency of $1,033,600,000.

194.    As noted in Item 6 on the Forms 10-K and 10-K/A filed by Revlon with the SEC for the years ending 2002 through 2009, Revlon was substantially over-leveraged.

195.    On December 31, 2003 Moody's Investors Service, Inc.("Moody's") assigned the following credit ratings to certain Revlon bonds: senior implied rating, Caa2; speculative grade liquidity ("SGL") rating, SGL-4; $250 million senior secured bank credit facilities due 2005, B3; $363 million 12% senior secured notes due 2005, Caa1; $250 million 9.0% senior notes due 2006, Ca; $250 million 8.125% senior notes due 2006, Ca; $650 million 8.625% senior subordinated notes due 2008, C; and senior unsecured issuer rating, Ca.

196.    On February 13, 2004 Moody's assigned the following credit ratings to certain Revlon bonds: senior implied rating, Caa2; $250 million senior secured bank credit facilities due 2005, B3; $363 million 12% senior secured notes due 2005, Caa1; $250 million 9.0% senior notes due 2006, Ca; $250 million 8.125% senior notes due 2006, Ca; $650 million 8.625% senior subordinated notes due 2008, C; senior unsecured issuer rating, Ca; and speculative grade liquidity rating, SGL-4.

197.    On April 27, 2004 Moody's assigned the following credit ratings to certain Revlon bonds: senior implied rating, to B3 from Caa2; senior unsecured issuer rating, to Caa1 from Ca; $327 million senior subordinated notes due 2008, upgraded to Caa2; $150 million senior secured revolving credit facility due 2009 at B2; $530 million senior secured term loan due 2010 at B2; $400 million senior unsecured notes due 2011 at Caa1; and speculative grade liquidity rating, at SGL-4.

198.    On May 27, 2004 Moody's assigned the following credit ratings to certain Revlon bonds: senior implied rating, affirmed at B3; $311.9 million senior secured credit facilities due 2005, affirmed at B2; $363.0 million 12% senior secured notes due 2005, affirmed at B2; $75.5 million 9.0% senior notes due 2006, affirmed at Caa1; $116.2 million 8.125% senior notes due 2006, affirmed at Caa1; $327.1 million 8.625% senior subordinated notes due 2008, affirmed at Caa2; senior unsecured issuer rating, affirmed at Caa1; Speculative grade liquidity rating, confirmed at SGL-4; 150 million senior secured revolving credit facility due 2009, B2 rating withdrawn; $530 million senior secured term loan due 2010, B2 rating withdrawn; and $400 million senior unsecured notes due 2011, Caa1 rating withdrawn.

199.    On June 24, 2004 Moody's assigned the following credit ratings to certain Revlon bonds: senior implied rating, affirmed at B3; $160 million senior secured revolving credit facility due 2009, assigned at B2; $750 million senior secured term loan facility due 2010, assigned at B3; $75.5 million 9.0% senior notes due 2006, downgraded to Caa2 from Caa1; $116.2 million 8.125% senior notes due 2006, downgraded to Caa2 from Caa1; $327.1 million 8.625% senior subordinated notes due 2008, downgraded to Caa3 from Caa2; senior unsecured issuer rating, downgraded to Caa2 from Caa1; and speculative grade liquidity ("SGL") rating, upgraded to SGL-3 from SGL-4.

FIRM:16154761v1
133218.00602/22031908v.2

200.    On December 1, 2004 Moody's assigned the following credit ratings to certain Revlon bonds: senior implied rating, affirmed at B3; $160 million senior secured revolving credit facility due 2009, affirmed at B2; $800 million senior secured term loan facility due 2010, affirmed at B3; $116 million 8.125% senior notes due 2006, affirmed at Caa2; $76 million 9% senior notes due 2006, affirmed at Caa2; $327 million 8.625% senior subordinated notes due 2008, affirmed at Caa3; speculative grade liquidity rating, downgrade to SGL-4 from SGL-3; and senior unsecured issuer rating, affirmed at Caa2.

201.    On March 9, 2005 Moody's assigned the following credit ratings to certain Revlon bonds: new $205 million senior notes due 2011, assigned at Caa2; senior implied rating, affirmed at B3; $160 million senior secured revolving credit facility due 2009, affirmed at B2; $800 million senior secured term loan facility due 2010, affirmed at B3; $116 million 8.125% senior notes due 2006, affirmed at Caa2; $76 million 9% senior notes due 2006, affirmed at Caa2; $327 million 8.625% senior subordinated notes due 2008, affirmed at Caa3; speculative grade liquidity rating, affirmed at SGL-4; and senior unsecured issuer rating, affirmed at Caa2.

202.    On August 4, 2005 Moody's assigned the following credit ratings to certain Revlon bonds: corporate family rating (formerly "senior implied rating"), affirmed at B3; $160 million senior secured revolving credit facility due 2009, affirmed at B2; senior secured term loan facility due 2010, affirmed at B3; $310 million senior notes due 2011, affirmed at Caa2; $327 million 8.625% senior subordinated notes due 2008, affirmed at Caa3; and speculative grade liquidity rating, upgraded to SGL-3 from SGL-4.

203.    According to Moody's, a credit rating of Aaa indicates that obligations are of the highest quality, with minimal credit risk.

204.     According to Moody's, a credit rating of Aa indicates that obligations are of high quality, with very low credit risk.

205.     According to Moody's, a credit rating of A indicates that obligations are a upper-medium grade, with low credit risk.

206.     According to Moody's, a credit rating of Baa indicates that obligations are a moderate credit risk.

207.     According to Moody's, a credit rating of Ba indicates that obligations are subject to substantial credit risk.

208.     According to Moody's, a credit rating of B indicates that obligations are considered speculative and subject to high credit risk.

209.     According to Moody's, a credit rating of Caa indicates that obligations are of poor standing and subject to very high credit risk.

210.     According to Moody's, a credit rating of Ca indicates that obligations are highly speculative and are likely in, or very near default, with some prospect for recovery of principal and interest.

211.     According to Moody's, a credit rating of C is the lowest rated class of bonds are typically in default, with little prospect for recovery of principal or interest.

212.     According to a September 2, 2002 article in the Delaney Report, Revlon was susceptible to a hostile takeover and Ronald Perelman feared such a takeover by financier Carl Icahn because Revlon was not making a profit and because Revlon's bonds had been rerated and were heading into junk status.

213.     According to an August 28, 2003 New York Times Business Day article by Riva D. Atlas, Revlon, because of its substantial indebtedness and insufficient assets, faced the

FIRM:16154761v1
133218.00602/22031908v.2

possibility of not having sufficient cash in early 2004 to meet its current obligations and required a cash infusion.

## THE MARCH 15, 2004 LETTER AGREEMENT

214.    Upon information and belief, on or about October 16, 2009 Revlon filed a form Schedule 13D with the SEC.

215.    One of the individuals or entities that executed the Schedule 13D was Raymond Perelman.

216.    Appended to the Schedule 13D and identified as Exhibit 2 was the March 15, 2004 Letter Agreement submitted on behalf of Raymond and Ruth Perelman.

217.    The March 15, 2004 Letter Agreement stated that Raymond and Ruth Perelman will vote the Revlon common stock held by the various entities, including the Pension Plan, "as directed by Mafco Holdings, Inc." and "appoint Mafco Holdings, Inc. as our attorney and proxy to vote with full power of substitution and otherwise act (written consent or otherwise) with respect to all Revlon stock."

218.    Attached to Exhibit 2 was a document entitled "Schedule A" that identified the Pension Plan as one of the entities for which Mafco Holdings, Inc. had been given full and unfettered power to vote with respect to all Revlon stock.

219.    The other entities included (a) various family charitable trusts, the Raymond and Ruth Perelman Community Foundation; the Raymond and Ruth Perelman Judaica Foundation; and the Raymond and Ruth Education Foundation (collectively, the "Foundations"); (b) Belmont Holdings, Inc. ("Belmont"), Raymond's holding company; and (c) an off-shore company, LCI Risk Management ("LCI"), that Raymond had established in the late 1980s of early 1990s using funds from a bankrupt corporation owned by Raymond, Nicolet, Inc.  Raymond had informed Jeffrey that Ronald had requested (through Howard Gittis and Mathew Kamens) Raymond's

assistance in purchasing Revlon bonds because Ronald needed help, and Raymond had utilized the assets of Belmont, the Foundations and LCI in order to provide that help to Ronald.

220.     The March 15, 2004 Letter Agreement was not disclosed until it was filed as Exhibit 2 to Schedule 13D filed by Revlon with the SEC on October 16, 2009.  At that time, Jeffrey first learned that apparently Raymond also had used the Pension Plan's assets (as well as the assets of the Pension Plan for Hourly Employees) to "help" Ronald.

221.     Schedule 13D stated that, as of March 15, 2004, Ronald Perelman either owned and/or controlled Mafco Holdings, Inc.

222.     Ronald Perelman, pursuant to the March 15, 2004 Letter Agreement that he executed on behalf of Mafco Holdings, Inc., a company that he owned and/or controlled, undertook full and unfettered management and control of Pension Plan assets becoming a fiduciary of the Pension Plan and as a result became a party-in-interest, and knowingly benefited from the Pension Plan's investment in Revlon because as a result of the March 15, 2004 Letter Agreement his beneficial ownership stake and voting power in Revlon increased.

223.     At no time was Mafco Holdings, Inc. an investment manager as that term is defined in 29 U.S.C. § 1002(38) or employed by the trustee to manage any assets of the Pension Plan.

224.     At no time was Ronald Perelman an investment manager as that term is defined in 29 U.S.C. § 1002(38) or employed by the trustee to manage any assets of the Pension Plan.

## COUNT I
### (Failure of Duty of Care by Raymond Perelman)

225.     Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through Paragraph 224, as if the same were fully set forth herein.

226.    A fiduciary, including a Plan Administrator and trustee, pursuant to 29 U.S.C. § 1104, is required to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan. In doing so, the fiduciary must act with the care, skill, prudence, and diligence under circumstances then prevailing that a prudent person, acting in like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like aims, by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so and in accordance with the documents and instruments governing the plan.

227.    Fiduciaries are personally liable for any losses to a plan resulting from any breach of fiduciary duty, and for restoring to the plan any profits that the fiduciary realized through use of plan assets pursuant to 29 U.S.C. § 1109.

228.    The Independent Auditors' Reports appended to and made a part of the Forms 5500 for at least plan years 2003 through 2008 revealed that Raymond Perelman, while acting as trustee, directed the investment of a large portion of Pension Plan assets in Revlon Bonds.

229.    Despite the substantial indebtedness of Revlon in 2004 and the Moody's credit ratings of Revlon bonds in 2004 indicating that an investment in Revlon was risky, Schedule H, Part IV Line 4J Schedule of Reportable Transactions on the 2004 Form 5500 reflected a purchase of Revlon Bonds in the amount of $1,211,000, which resulted in a total investment in Revlon Bonds at the end of plan year 2004 in the amount of $4,889,772, which represented 35.5% of the total assets of the Pension Plan.

38

230.    Upon information and belief, Raymond Perelman did not seek the advice of an investment advisor before investing large percentages of Pension Plan assets in Revlon Bonds.

231.    Raymond Perelman failed to discharge his fiduciary duties of providing benefits to participants and beneficiaries with care, skill prudence and diligence required pursuant to 29 U.S.C. § 1104 by (a) failing to conduct any investigation and failing to analyze any documents or reports as to the creditworthiness of a substantially indebted Revlon and by ignoring same and (b) failing to consult an investment advisor or obtain information sufficient to make an educated investment before investing large percentages of the Pension Plan assets in corporate bonds of Revlon—an over-leveraged company.

232.    Raymond Perelman also failed to discharge his fiduciary duties of (i) acting solely in the interests of the participants and beneficiaries and (ii) for the exclusive purpose of providing benefits to participants by failing to institute and comply with a written investment policy for the Pension Plan.

233.    Raymond Perelman also breached his fiduciary duties of (i) acting solely in the interests of the participants and beneficiaries and (ii) for the exclusive purpose of providing benefits to participants by engaging the Pension Plan in prohibited party-in-interest transactions, pursuant to 29 U.S.C. § 1002(14) and 29 U.S.C. § 1106, by specifically directing the investment of a large percentage of Pension Plan assets in Revlon Bonds to assist in raising capital for a debt-laden Revlon, a company in which his son, Ronald Perelman, was the controlling shareholder, and by giving Ronald Perelman full and unfettered voting control over the stock of Revlon owned by the Pension Plan through the March 15, 2004 Letter Agreement, which increased Ronald Perelman's beneficial ownership stake and voting power in Revlon and helped to protect Ronald Perelman from potential hostile takeovers.

FIRM:16154761v1
133218.00602/22031908v.2

234.     Raymond Perelman also breached his fiduciary duties of (i) acting solely in the interests of the participants and beneficiaries and (ii) for the exclusive purpose of providing benefits to participants by engaging the Pension Plan in prohibited party-in-interest transactions, pursuant to 29 U.S.C. § 1002(14) and 29 U.S.C. § 1106, by specifically directing the investment of a large percentage of Pension Plan assets in Revlon Bonds, a company in which he personally held a 9.6% beneficial ownership interest of Class A common stock.

## COUNT II
### (Engaging in Prohibited Party-in-Interest Transactions)

235.     Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through Paragraph 234, as if the same were fully set forth herein.

236.     The Independent Auditors' Reports appended to and made a part of the Forms 5500 for at least plan years 2003 through 2008 revealed that Raymond Perelman, while acting as the sole trustee, directed the investment of a large portion of Pension Plan assets in Revlon Bonds.

237.     The Independent Auditors' Reports appended to and made a part of the Forms 5500 for at least plan years 2006 through 2008 admitted that the investments by the Pension Plan in Revlon Bonds constituted prohibited party-in-interest transactions.

238.     According to Revlon's Forms 10-K and 10-K/A filed with the SEC for at least the years ending 2003 through 2005 Ronald Perelman was the controlling shareholder of Revlon.

239.     Raymond Perelman directed the investment of Pension Plan assets in Revlon Bonds, not in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries with care, skill, prudence, and diligence required pursuant to 29 U.S.C. § 1104, but at the request of and for the benefit of his son, Ronald Perelman, and for his own personal benefit.

40

240.    Raymond Perelman, pursuant to the March 15, 2004 Letter Agreement executed by him, agreed to Ronald Perelman's undertaking of full and unfettered power to vote all Revlon stock owned by the Pension Plan through Mafco Holdings, Inc., a company owned and/or controlled by Ronald Perelman.

241.    Raymond Perelman, through the transfer of voting power pursuant to the March 15, 2004 Letter Agreement, provided a benefit to Ronald Perelman because Ronald Perelman's beneficial ownership stake in Revlon increased, thereby increasing Ronald Perelman's voting power in Revlon.

242.    Ronald Perelman was benefitted, as the controlling shareholder of Revlon, by the investment of Pension Plan assets in Revlon because it provided much needed capital to a company that according to Revlon's Forms 10-K and 10-K/A and the Moody's credit ratings was substantially indebted.

243.    Ronald Perelman was also benefitted, as the controlling shareholder of Revlon, by the investment of Pension Plan assets in Revlon and his subsequent undertaking of full and unfettered voting power over Pension Plan stock in Revlon because this increased his beneficial ownership stake and voting power in Revlon, which made any potential hostile takeover of Revlon more difficult.

244.    Raymond Perelman breached his fiduciary duty to all Pension Plan participants including the Plaintiff by engaging the Pension Plan in prohibited transactions with a party-in-interest pursuant to 29 U.S.C. § 1106, by specifically directing the investment of a percentage of Pension Plan assets in Revlon Bonds, a company owned and controlled by his son Ronald Perelman.

245.     Raymond Perelman also breached his fiduciary duty to all Pension Plan participants including the Plaintiff by engaging the Pension Plan in prohibited transactions with a party-in-interest pursuant to 29 U.S.C. § 1106, by investing in a company in which he held a 9.6% beneficial ownership stake of Class A common stock and by agreeing to the undertaking of full and unfettered voting control of Pension Plan assets invested in Revlon to his son Ronald Perelman indirectly through Mafco Holdings, Inc., a company that Ronald Perelman owned and/or controlled, and allowing Ronald Perelman to use Pension Plan assets for his own benefit.

**COUNT III**
**(Raymond Perelman's Failure to Diversify the Assets of the Pension Plan)**

246.     Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through Paragraph 245, as if the same were fully set forth herein.

247.     The 2004 Form 5500 and the Independent Auditor's Report dated September 27, 2005 appended to and made a part of the 2004 Form 5500 revealed that Raymond Perelman, as Plan Administrator and trustee, directed the investment of $4,889,752, or 35.5%, of the Pension Plan's total assets of $13,775,652 for plan year 2004, in Revlon Bonds.

248.     The 2005 Form 5500 and the Independent Auditor's Report dated September 28, 2006 appended to and made a part of the 2005 Form 5500 revealed that Raymond Perelman, as Plan Administrator and trustee, directed the investment of $5,245,271, or 38.5%, of the Pension Plan's total assets of $13,615,500 for plan year 2005, in Revlon Bonds.

249.     As noted in Item 6 on the Forms 10-K and 10-K/A filed by Revlon with the SEC for the years ending 2004 and 2005, Revlon was substantially over-leveraged.

250.     According to the Moody's credit ratings in plan years 2004 and 2005, investments in any of the bonds issued by Revlon involved substantial risk.

FIRM:16154761v1
133218.00602/22031908v.2

251.    Despite the substantial indebtedness of Revlon in 2004 and the Moody's credit ratings of Revlon bonds in 2004 indicating that an investment in Revlon was risky, Schedule H, Part IV Line 4J Schedule of Reportable Transactions on the 2004 Form 5500 reflected a purchase of Revlon Bonds in the amount of $1,211,000, which resulted in a total investment in Revlon Bonds at the end of plan year 2004 in the amount of $4,889,772, which represented 35.5% of the total assets of the Pension Plan.

252.    Raymond Perelman breached the fiduciary duty which he owed to all Pension Plan participants including the Plaintiff by failing to appropriately diversify the assets of the Pension Plan so as to minimize the potential for loss to the Pension Plan as mandated by 29 U.S.C. § 1104(a)(l), by specifically directing 35.5% and 38.5% of the assets of the Pension Plan in plan years 2004 and 2005 to be invested in Revlon Bonds despite Revlon's substantial indebtedness and the substantial risk involved in investing in Revlon Bonds as indicated by Moody's poor credit ratings.

## COUNT IV
## (Raymond Perelman's Failure to Update or Maintain Proper Plan Documents)

253.    Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through Paragraph 252, as if the same were fully set forth herein.

254.    Pursuant to 29 U.S.C. §§ 1024-1027 plan administrators have a duty to report and disclose documents and information concerning a plan to participants so that participants have access to information about their benefits.

255.    Pursuant to 29 U.S.C. § 1022(b)(l) plan administrators shall furnish to each participant an updated summary plan description every five years if there have been plan amendments in that period, or at least every ten years if there have been no plan amendments.

FIRM:16154761v1
133218.00602/22031908v.2

256.    In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated April 30, 2010 from its counsel Dilworth Paxson provided "[t]he latest Summary Plan Description for the Salaried Plan."

257.    The "latest Summary Plan Description for the Salaried Plan" provided by the Pension Plan through its counsel Dilworth Paxson is dated November 9, 1994.

258.    Each of the Independent Auditor's Reports appended to and made a part of the Forms 5500 for the plan years 2003 through 2008 referred to the plan as being last amended on February 29, 1996.

259.    The "[t]he latest Summary Plan Description for the Salaried Plan" provided to the Plaintiff does not refer to a plan amended and restated in 1996.

260.    Upon information and belief, the "[t]he latest Summary Plan Description for the Salaried Plan" does not refer to a plan amended or restated after 1994.

261.    In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated April 30, 2010 from its counsel Dilworth Paxson provided "the current operative plan document" that states it was amended and restated as of January 1, 1997.

262.    In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated June 30, 2010 from its counsel Dilworth Paxson provided "[a]mendments 1, 2 and 3 to the Salaried Plan."

263.    The amendments provided to the Pension Plan reflect that amendments were made effective on January 1, 2002, July 1, 2007 and January 1, 2008.

264.    None of the Independent Auditors' Reports appended to and made a part of the Forms 5500 for the plan years 2003 through 2008 reflected that the Pension Plan was amended

and restated effective January 1, 1997 or that the Pension Plan was amended effective January 1, 2002, July 1, 2007 and January 1, 2008.

265.    The Independent Auditor's Report appended to and made a part of the 2009 Form 5500 referred to the Pension Plan as being last amended on January 1, 2002, but failed to make any reference to the July 1, 2007 or January 1, 2008 amendments.

266.    In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated April 30, 2010 from its counsel Dilworth Paxson provided the Trust Agreement that stated it was made and entered into on November 1, 2003.

267.    The language of the Trust Agreement further stated that a plan document was adopted concurrently with the Trust Agreement on November 1, 2003.

268.    Despite Plaintiff's request by letter dated April 2, 2010 no plan document dated November 1, 2003 has been provided by the Plan Administrators.

269.    Schedule H, Part IV, Line D of the 2004 Form 5500 inquired "[w]ere there any nonexempt transactions with any party-in-interest?"

270.    Schedule H, Part IV, Line D of the 2004 Form 5500 reflects that the answer was no by marking the checkbox "No" at the end of the question.

271.    Schedule H, Part IV Line 4J Schedule of Reportable Transactions on the 2004 Form 5500, made a part of the Independent Auditor's Report, reflected a reportable transaction described as "Revlon Consumer Products Corporate Bond (1 purchase)," with a purchase price of "$1,211,000," cost of asset of "1,211,000" and the current value of the asset on the transaction date as "1,211,000."

272.    Schedule H, Part IV Line 4J "Schedule of Reportable Transactions" on the 2004 Form 5500 is in direct contradiction to the answer provided on the 2004 Form 5500 Schedule H, Part IV, Line D regarding party-in-interest transactions.

273.    Raymond Perelman, as trustee and/or plan administrator, breached his duty of disclosure and reporting as mandated by 29 U.S.C. §§ 1024-1027 by failing to update or maintain accurate plan documents, and violated 18 U.S.C. § 1027 by knowingly misrepresenting material facts on a Form 5500.

**COUNT V**
**(Raymond Perelman's Improper Delegation of Control of Pension Plan Assets)**

274.    Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through Paragraph 273, as if the same were fully set forth herein.

275.    According to the Pension Plan document, amended and restated, effective January 1, 1997, the trustees of the Pension Plan "shall be the named fiduciary with respect to management and control of Plan assets held by it and shall have exclusive and sole responsibility for the custody and investment thereof in accordance with the Trust Agreement."

276.    The Trust Agreement identified Raymond Perelman as the sole trustee of the Pension Plan.

277.    Upon information and belief, Revlon filed a form designated as Schedule 13D with the SEC on or about October 16, 2009 that appended as Exhibit 2 the March 15, 2004 Letter Agreement submitted on behalf of Raymond and Ruth Perelman.

278.    The March 15, 2004 Letter Agreement stated that Raymond and Ruth Perelman will vote the Revlon common stock held by the various entities, including the Pension Plan, "as directed by Mafco Holdings, Inc." and "appoint Mafco Holdings, Inc. as our attorney and proxy

to vote with full power of substitution and otherwise act (written consent or otherwise) with respect to all Revlon stock."

279.    Attached to Exhibit 2 was a document entitled. "Schedule A" that identified the Pension Plan as one of the entities for which Mafco Holdings, Inc. had been given full and unfettered power to vote with respect to all Revlon stock.

280.    According to Schedule 13D, as of March 15, 2004, Ronald Perelman either owned and/or controlled Mafco Holdings, Inc.

281.    At no time was Mafco Holdings, Inc. an investment manager as defined in 29 U.S.C. § 1002(38) or employed by the trustee to manage any assets of the Pension Plan.

282.    At no time was Ronald Perelman an investment manager as defined in 29 U.S.C. § 1002(38) or employed by the trustee to manage any assets of the Pension Plan.

283.    Raymond Perelman breached the fiduciary duty which he owed to all Pension Plan participants as mandated by 29 U.S.C. § 1104(a)(l), 29 U.S.C. § 1106 and by the Pension Plan document, amended and restated, effective January 1, 1997, by engaging in a prohibited party-in-interest transaction when he agreed to relinquish fall and unfettered management and control of the Pension Plan's voting power in Revlon, a substantially indebted company in which the Pension Plan had an investment, to his son Ronald Perelman, a non-investment advisor, through Mafco Holdings, Inc., a company that, upon information and belief, is owned and/or controlled by Ronald Perelman and through which Ronald Perelman controlled Revlon, and by failing to disclose such delegation of voting power to participants in the Pension Plan.

### COUNT VI
### (Jason Guzek's and General Refractories Company's
### Failure to Diversify the Assets of the Pension Plan)

284.    Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through Paragraph 283, as if the same were fully set forth herein.

285.    The 2006 Form 5500 and the Independent Auditor's Report dated October 5, 2007 appended to and made a part of the 2006 Form 5500 revealed that Jason Guzek, as Plan Administrator, directed the investment of $3,582,714, or 25.7%, of the Pension Plan's total assets of $13,932,245 for plan year 2006, in Revlon Bonds.

286.    The 2007 Form 5500 and the Independent Auditor's Report dated September 27, 2008 appended to and made a part of the 2007 Form 5500 revealed that Jason Guzek, as Plan Administrator, directed the investment of $2,786,837, or 20.8%, of the Pension Plan's total assets of $13,393,159 for plan year 2007, in Revlon Bonds.

287.    The 2008 Form 5500 and the Independent Auditor's Report dated September 28, 2009 appended to and made a part of the 2008 Form 5500 revealed that Jason Guzek, as Plan Administrator, directed the investment of $2,897,220, or 26.1%, of the Pension Plan's total assets of $11,102,809 for plan year 2008, in Revlon Bonds.

288.    According to Item 6 of the Forms 10-K and 10-K/A filed with the SEC by Revlon for the years ending 2006 through 2008, Revlon was substantially over-leveraged.

289.    Jason Guzek and General Refractories Company, as Plan Administrators, breached their fiduciary duty which they owed to all Pension Plan participants including the Plaintiff by failing to diversify the assets of the Pension Plan as mandated by 29 U.S.C. § 1104(a)(l), by specifically directing 25.7%, 20.8% and 26.1% of the assets of the Pension Plan in plan years 2006, 2007 and 2008, respectively, to be invested in Revlon Bonds despite its poor financial condition.

**COUNT VII**
**(Jason Guzek's and General Refractories Company's**
**Failure to Update or Maintain Proper Plan Documents)**

290.    Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through Paragraph 289, as if the same were fully set forth herein.

48

291.    Plan Administrators, pursuant to 29 U.S.C. §§ 1024-1027, have a duty to report and disclose documents and information concerning the plan to participants so that participants have access to information about their benefits.

292.    Pursuant to 29 U.S.C. § 1024(b)(l) plan administrators shall furnish to each participant an updated summary plan description every five years if there have been plan amendments in that period or at least every ten years if there have been no plan amendments.

293.    In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated April 30, 2010 from its counsel Dilworth Paxson provided "[t]he latest Summary Plan Description for the Salaried Plan."

294.    The "[t]he latest Summary Plan Description for the Salaried Plan" provided by the Pension Plan through its counsel Dilworth Paxson is dated November 9, 1994.

295.    Each of the Independent Auditors' Reports appended to and made a part of the Forms 5500 for the plan years 2003 through 2008 referred to the Pension Plan as being last amended on February 29, 1996.

296.    The Independent Auditor's Report appended to and made a part of the 2009 Form 5500 referred to the Pension Plan as being last amended on January 1, 2002.

297.    In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated April 30, 2010 from its counsel Dilworth Paxson provided the "current operative plan document" that states it was amended and restated as of January 1, 1997.

298.    In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated June 30, 2010 from its counsel Dilworth Paxson provided "[amendments 1, 2 and 3 to the Salaried Plan."

49

299.    The amendments provided to the Pension Plan reflect that amendments were made effective on January 1, 2002, July 1, 2007 and January 1, 2008.

300.    None of the Independent Auditors' Reports appended to and made a part of the Forms 5500 for the plan years 2003 through 2008 reflected that the Pension Plan was amended and restated effective January 1, 1997 or that the Pension Plan was amended effective January 1, 2002, July 1, 2007 and January 1, 2008.

301.    The Independent Auditor's Report appended to and made a part of the 2009 Form 5500 referred to the Pension Plan as being last amended on January 1, 2002, but did not refer to the July 1, 2007 and January 1, 2008 amendments.

302.    In response to Plaintiff's request for plan documents dated April 2, 2010, the Pension Plan by response letter dated April 30, 2010 from its counsel Dilworth Paxson provided the Trust Agreement that stated it was made and entered into on November 1, 2003.

303.    The language of the Trust Agreement further stated that a plan document was adopted concurrently with the Trust Agreement on November 1, 2003.

304.    Despite Plaintiff's request by letter dated April 2, no plan document dated November 1, 2003 has been provided by the Plan Administrators.

305.    None of the Forms 5500 for plan years 2003 through 2008, including the Forms 5500 for plan years 2006 through 2008 executed by Jason Guzek as plan administrator, disclosed that Raymond Perelman was the beneficial owner of 9.6% of Revlon Class A common stock.

306.    Jason Guzek and General Refractories Company, as Plan Administrators, breached their duty of disclosure and reporting as mandated by 29 U.S.C. §§ 1024-1027 by failing to update or maintain accurate plan documents, and by knowingly omitting material facts from the Forms 5500 for plan years 2006 through 2008 in violation of 18 U.S.C. § 1027.

50

## COUNT VIII
### (Jason Guzek's and General Refractories Company's Co-Fiduciary Liability for Failing to Prosecute Breach of Fiduciary Duty Action Against Raymond Perelman)

307.   Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through Paragraph 306, as if the same were fully set forth herein.

308.   A fiduciary, including a Plan Administrator, pursuant to 29 U.S.C. § 1104, is required to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and  for the exclusive purpose of providing benefits to participants  and beneficiaries.

309.   A fiduciary, including a Plan Administrator, pursuant to 29 U.S.C. § 1105, is liable for the breaches of co-fiduciaries.

310.   Upon information and belief, Jason Guzek and/or General Refractories Company replaced Raymond Perelman as Plan Administrator in 2006.

311.   The Forms 5500 for plan years 2006 through 2008 were executed by Jason Guzek as Plan Administrator.

312.   Note 7 to the Independent Auditor's Report dated October 5, 2007 appended to and made a part of the 2006 Form 5500 disclosed for the first time that the Pension Plan's investment in Revlon Bonds constituted a party-in-interest transaction.

313.   In light of the statements in the Independent Auditor's Report dated October 5, 2007 appended to and made a part of the 2006 Form 5500, Jason Guzek and General Refractories Company, as Plan Administrators, became aware of the breaches of the duty of care by Raymond Perelman.

51

314.     Jason Guzek and General Refractories Company, however, failed to make any efforts to remedy Raymond Perelman's breaches, including failing to initiate a breach of duty of care action against Raymond Perelman for his breaches as Plan Administrator and trustee.

315.     Jason Guzek and General Refractories Company failed to discharge their fiduciary duties of providing benefits to participants and beneficiaries with care, skill, prudence, and diligence required pursuant to 29 U.S.C. § 1104 and failed to make reasonable efforts to remedy a known breach pursuant to 29 U.S.C. § 1105, by failing to prosecute an action against Raymond Perelman for his breaches of fiduciary duties as Plan Administrator and trustee because participants have an interest in prosecuting breaches of fiduciary duties in order to protect their interests in the Pension Plan.

**COUNT IX**
**(Ronald Perelman's Knowing Participation in Prohibited Party-in-Interest Transactions)**

316.     Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through Paragraph 315, as if the same were fully set forth herein.

317.     Ronald Perelman is the son of Raymond Perelman and as a relative of a fiduciary is a party-in-interest as defined in 29 U.S.C. § 1002(14).

318.     Upon information and belief, Ronald Perelman first acquired majority control of Revlon in 1985.

319.     According to Forms 10-K and Proxy Statements filed with the SEC on behalf of Revlon for years 1996 through 2005, Ronald Perelman, through Mafco Holdings, Inc. and/or MacAndrews & Forbes Holdings, Inc., held a majority ownership of Revlon.

320.     Upon information and belief, Ronald Perelman was the controlling shareholder of Mafco Holdings, Inc. and MacAndrews & Forbes Holdings, Inc.

FIRM:16154761v1
133218.00602/22031908v.2

321.    As noted in Item 6 on the Forms 10-K and 10-K/A filed by Revlon with the SEC for the years ending 2002 through 2005, Revlon's total indebtedness greatly exceeded its assets in each of the years resulting in significant shareholder deficiencies, thereby rendering Revlon substantially over-leveraged.

322.    According to a September 2, 2002 article in the Delaney Report, Revlon was susceptible to a hostile takeover and Ronald Perelman feared such a takeover by financier Carl Icahn because Revlon was not making a profit and because Revlon's bonds had been rerated and were heading into junk status.

323.    According to an August 28, 2003 New York Times Business Day article by Riva D. Atlas, Revlon, because of its substantial indebtedness and insufficient assets, faced the possibility of not having sufficient cash in early 2004 to meet its current obligations and required a cash infusion.

324.    According to the Moody's credit ratings assigned to Revlon bonds in 2004 and 2005, an investment in such bonds involved considerable risk.

325.    Ronald Perelman was aware that Raymond Perelman's investment of Pension Plan assets in Revlon involved substantial risk because, as the controlling shareholder and chairman of the board of Revlon, Ronald Perelman knew or should have known Revlon's poor financial condition including its substantial indebtedness and the poor credit ratings assigned to various Revlon bonds by Moody's.

326.    Ronald Perelman, by undertaking voting control of Pension Plan assets invested in Revlon from Raymond Perelman through the March 15, 2004 Letter Agreement was aware that Raymond Perelman was the trustee of the Pension Plan and/or controlled the assets of the Pension Plan, and that the Pension Plan invested part of its assets in Revlon.

327.    Upon information and belief, Howard Gittis, the vice chairman of MacAndrews & Forbes Holdings, Inc., along with Matthew Kamens, acted as advisors to Ronald Perelman.

328.    According to Plaintiff, Ronald Perelman directed Howard Gittis and Matthew Kamens to approach Raymond Perelman to request that he purchase high interest Revlon Bonds, with the understanding that the Revlon Bonds would shortly be converted into Revlon stock.

329.    Among the assets used by Raymond Perelman to purchase high interest Revlon Bonds were assets of the Pension Plan.

330.    According to the Forms 5500 and the Independent Auditors' Reports appended thereto and made a part thereof for plan years 2003 through 2005, Raymond Perelman, as Plan Administrator and trustee, directed a large percentage of the Pension Plan's assets to be invested in Revlon Bonds.

331.    The investments in Revlon Bonds at the behest of Ronald Perelman were prohibited party-in-interest transactions pursuant to 29 U.S.C. § 1106 because the investments were not made in the sole interest of the participants, rather the investments were made to raise capital for Revlon, indirectly benefitting Ronald Perelman, the majority shareholder of Revlon.

332.    Ronald Perelman is liable to the Pension Plan for any profits realized by him through the improper use of Pension Plan assets because as a party-in-interest he orchestrated, along with his father Raymond Perelman, to use Pension Plan assets for the benefit of Revlon and by extension himself.

333.    Ronald Perelman, pursuant to the March 15, 2004 Letter Agreement executed by him on behalf of Mafco Holdings, Inc., a company he owned and/or controlled, knowingly benefitted himself by increasing his beneficial ownership stake and voting power in Revlon

when he undertook from Raymond Perelman full and unfettered power to vote all Revlon stock owned by the Pension Plan.

334.    Ronald Perelman's undertaking of full and unfettered voting control of the Pension Plan's Revlon stock as the controlling shareholder of Revlon was a prohibited party-in-interest transaction pursuant to 29 U.S.C. § 1106 because such transfer through Mafco Holdings, Inc., a company Ronald Perelman owned and/or controlled, was for the benefit of Ronald Perelman, a party-in-interest, because it gave him beneficial ownership over the Pension Plan's assets in Revlon, thereby increasing his total beneficial ownership of Revlon, which helped to protect him from a potential hostile takeover.

335.    Ronald Perelman, a party-in-interest, by undertaking full and unfettered voting control of Pension Plan assets through the March 15, 2004 Letter Agreement, knowingly participated in this prohibited party-in-interest transaction, and is liable to the Pension Plan for any profits realized by him or his companies through the improper use of Pension Plan assets.

336.    Ronald Perelman is liable to the Pension Plan for any profits realized by him through the improper use of Pension Plan assets because as a party-in-interest he knew, as evidenced by the March 15, 2004 Letter Agreement, that his father Raymond Perelman was the trustee of the Pension Plan and that the Pension Plan invested in Revlon, and he was aware, as the controlling shareholder and chairman of the board or Revlon, that an investment in Revlon was tremendously risky because Revlon was significantly over-leveraged and Revlon bonds had received extremely poor credit ratings.

## COUNT X
### (Failure of Duty of Care by Ronald Perelman)

337.    Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through Paragraph 336, as if the same were fully set forth herein.

338.     By undertaking full and unfettered management and control over Pension Plan assets through the March 15, 2004 Letter Agreement, Ronald Perelman became a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(i).

339.     Ronald Perelman breached his fiduciary duty to act in the sole interest of the Pension Plan pursuant to 29 U.S.C. § 1104, by undertaking full and unfettered management of Pension Plan assets that were invested in Revlon, a company he owned and controlled.

340.     Ronald Perelman breached his fiduciary duty to act prudently pursuant to 29 U.S.C. § 1104 by permitting the Pension Plan to invest in Revlon Bonds despite the substantial indebtedness of Revlon and the poor credit ratings assigned Revlon bonds by Moody's.

341.     Ronald Perelman is liable to the Pension Plan for any losses to the Pension Plan and any profits realized by him through his breach of fiduciary duty because he positioned himself in a conflicted position with the interests of the Pension Plan and the interests of Revlon because (a) as the owner and controlling shareholder of the over-leveraged Revlon, he needed to raise the most capital possible to ensure its survival, and (b) as a fiduciary of the Pension Plan he was obligated to discharge his duty solely in the interests of the Pension Plan.

### COUNT XI
### (Co-Fiduciary Liability of Ronald Perelman)

342.     Plaintiff repeats and re-alleges the allegations set forth in Paragraph 1 through Paragraph 341, as if the same were fully set forth herein.

343.     By undertaking full and unfettered management and control over Pension Plan assets through the March 15, 2004 Letter Agreement, Ronald Perelman became a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(i).

344.     Ronald Perelman, as controlling shareholder of Revlon and the chairman of the board, was aware of the substantial indebtedness of Revlon.

345.     Ronald Perelman, as controlling shareholder of Revlon and the chairman of the board, was aware that Moody's had assigned credit ratings to various Revlon bonds indicating that investments in such Revlon bonds involved substantial risk.

346.     By accepting full and unfettered control of voting power over all Revlon stock owned by the Pension Plan pursuant to the March 15, 2004 Letter Agreement, Ronald Perelman was aware that Raymond Perelman was the trustee of the Pension Plan and that the Pension Plan invested in Revlon.

347.     Ronald Perelman, by having knowledge of the poor financial condition of Revlon and the substantial risk associated with Revlon bonds, knew Raymond Perelman breached his fiduciary duty to invest Pension Plan assets prudently when Raymond Perelman directed a large percentage of Pension Plan assets to be invested in Revlon Bonds because any investment in Revlon involved substantial risk.

348.     By accepting full and unfettered control of voting power over all Revlon stock owned by Raymond Perelman pursuant to the March 15, 2004 Letter Agreement, Ronald Perelman was aware that Raymond Perelman was the beneficial owner of Revlon stock.

349.     Ronald Perelman, by having knowledge of Raymond Perelman's ownership interest in Revlon knew that Raymond Perelman was breaching his duty of acting exclusively in the interests of the Pension Plan.

350.     Upon information and belief, Ronald Perelman made no effort to remedy Raymond Perelman's breaches of fiduciary duty where Raymond Perelman invested imprudently in Revlon, a company that was significantly indebted and received poor credit ratings, and invested in Revlon despite Raymond Perelman's beneficial ownership of 9.6% of the Class A common stock of Revlon.

FIRM:16154761v1
133218.00602/22031908v.2

351.    Ronald Perelman is liable to the Pension Plan as a co-fiduciary for any losses to the Pension Plan and any profits realized by him because he had knowledge of Raymond Perelman's breaches of fiduciary duties and did not make a reasonable effort to remedy Raymond Perelman's breaches of fiduciary duties, and instead continued to allow the Pension Plan to invest in Revlon.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief against the defendants as follows:

1.    On Counts I and II:  An order directing Raymond Perelman to restore to the Pension Plan any losses suffered by the Pension Plan and any profits realized by him, Ronald Perelman and/or Revlon from his directing the Pension Plan's investment in a prohibited party- in-interest transaction whereby Pension Plan assets were improperly used to purchase Revlon Bonds for his benefit and the benefit of his son, Ronald Perelman.

2.    On Count III:  An order directing Raymond Perelman to restore to the Pension Plan any losses suffered by the Pension Plan and any profits realized by him, Ronald Perelman and/or Revlon for his failing to diversify the Pension Plan's investments, to wit, by directing a large percentage of the Pension Plan's assets to be invested Revlon Bonds.

3.    On Count IV:  An order directing Raymond Perelman to restore to the Pension Plan any losses suffered by the Pension Plan and any profits realized by him, Ronald Perelman and/or Revlon from his knowing misrepresentations and omissions on Pension Plan documents.

4.    On Count V:  An order directing Raymond Perelman to restore to the Pension Plan any losses suffered by the Pension Plan and any profits realized by him, Ronald Perelman and/or Revlon for his imprudent delegation of voting control of Revlon stock to Mafco Holdings, Inc., a company controlled by his son Ronald Perelman.

5.    On Count VI:  An order directing Jason Guzek and General Refractories Company to restore to the Pension Plan any losses suffered by the Pension Plan and any profits realized by them, Raymond Perelman, Ronald Perelman and/or Revlon for failing to diversify the Pension Plan's investments, to wit, by directing a large percentage of the Pension Plan's assets to be invested Revlon Bonds.

6.    On Count VII:  An order directing Jason Guzek and General Refractories Company to restore to the Pension Plan any losses suffered by the Pension Plan and any profits realized by them, Raymond Perelman, Ronald Perelman and/or

Revlon for their failure to properly update or maintain Pension Plan documents and knowing omissions on Pension Plan documents of prohibited transactions.

7.   <u>On Count VIII</u>:   An order directing Jason Guzek and General Refractories Company to restore to the Pension Plan any losses suffered by the Pension Plan and any profits realized by them because of their liability as co-fiduciaries in failing to bring a breach of fiduciary duty claim against Raymond Perelman.

8.   <u>On Counts I – VIII</u>:  Relief pursuant to 29 U.S.C.  Sec. 1104, 29 U.S.C. Sec. 1105, 29 U.S.C.1106 and 29 U.S.C. Sec. 1109, (a) to have Raymond Perelman and Jason Guzek removed as trustee and administrator of the Pension Plan; (b) to have Raymond Perelman and Jason Guzek permanently enjoined from ever serving as a fiduciary with regard to any employee benefit plan subject to ERISA; (c) to have an independent trustee appointed for the Pension Plan; and (d) to direct the independent trustee to hire an independent auditor to conduct an audit of the Pension Plan for Plan Years 2002 through 2010 to ascertain the veracity of information contained in the Forms 5500 for Plan Years 2002-2010.

9.   <u>On Counts I – VIII</u>:  Relief pursuant to 29 U.S.C.  Sec 1104, 29 U.S.C. Sec 1105, 29 U.S.C. Sec. 1106 and 29 U.S.C. Sec 1109 to have those provisions of the Pension Plan and/or the General Refractories Pension Plan for Salaried Employees Trust Agreement which purport to relieve and/or to indemnify the Trustee from responsibility or liability for any obligation or duty owed under ERISA to be declared null and void as against public policy and violative of ERISA

10.   <u>On Count IX</u>:   Equitable relief directing Ronald Perelman to restore to the Pension Plan any profits realized by him, Raymond Perelman and/or Revlon by orchestrating and knowingly participating in prohibited party-in-interest transactions whereby Pension Plan assets were improperly used to purchase Revlon Bonds and whereby Ronald Perelman impermissibly obtained the full and unfettered voting power of Pension Plan assets invested in Revlon, a company that he owned and controlled.

11.   <u>On Count X</u>:  An order directing Ronald Perelman to restore to the Pension Plan any losses suffered by the Pension Plan and any profits realized by him and/or Revlon from his breach of fiduciary duty by not acting in the sole interest and benefit of the Pension Plan, but rather exercising full and unfettered management and control of Pension Plan assets in Revlon thereby positioning himself in a conflicted position with the interests of the Pension Plan and the interests of Revlon.

12.   <u>On Count XI</u>:  An order directing Ronald Perelman to restore to the Pension Plan any losses suffered by the Pension Plan and any profits realized by him because of his liability as a co-fiduciary in failing to bring a breach of fiduciary duty claim against Raymond Perelman.

FIRM:16154761v1
133218.00602/22031908v.2

13.     An order directing the defendants to personally pay reasonable attorneys' fees and costs of this action pursuant to 29 USC § 1132(g) and such other legal or equitable relief as this court deems appropriate.

14.     Plaintiff further requests this Court grant such other and further relief deemed just and proper.

Dated: June 24, 2011

                          BLANK ROME LLP


                    By:   s/ James T. Smith
                          James T. Smith, Esq.
                          Rebecca D. Ward, Esq.
                          One Logan Square
                          Philadelphia, PA 19103

                          *Attorneys for Plaintiff Jeffrey E. Perelman*

FIRM:16154761v1
133218.00602/22031908v.2