IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY E. PERELMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RAYMOND G. PERELMAN, ET AL. | : | NO. 10-5622 |

**MEMORANDUM**

**Padova, J.**                                                                                          **August 27, 2012**

Presently before the Court in this ERISA action filed by Plaintiff Jeffrey E. Perelman ("Jeffrey") are Motions by Defendants Raymond G. Perelman ("Raymond"), Ronald O. Perelman ("Ronald"), Jason Guzek ("Guzek") and General Refractories Company ("GRC") to dismiss Plaintiff's Second Amended Complaint (the "SAC") for failure to state claims upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), and for lack of standing.[1]  For the reasons that follow, we grant the motion to dismiss in part.

**I.     BACKGROUND**

The SAC alleges the following facts which, for purposes of our Rule 12(b)(6) review, are taken to be true.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Jeffrey is, and has been since approximately 1985, a participant in the General Refractories Company Pension Plan ("the Plan"), an employee pension benefit plan within the meaning of ERISA.  (SAC ¶¶ 8-9.) At various times, Raymond, Guzek, and GRC were administrators of the Plan.  (Id. ¶¶ 10, 14, 22.) Raymond was also the trustee of the Plan.  (Id. ¶¶ 12, 13.)  Raymond is the father of Jeffrey and Ronald.  (Id. ¶ 16.)  Ronald was, at all relevant times, the controlling shareholder of Revlon, Inc.

---

[1]The Motion based on standing seeks, in the alternative, summary judgment under Fed. R. Civ. P. 56.  Because we determine all standing issues based upon the allegations of the SAC, we need not reach the arguments raised in the summary judgment portion of the Motion.

(together with Revlon Consumer Products Corporation, "Revlon").  (Id. ¶ 1.)

From 2002 through 2009, Revlon was substantially over-leveraged and had poor credit ratings assigned to its corporate bonds (the "Revlon bonds").  (Id. ¶¶ 37, 49, 74, 88.)  During that period, Raymond directed the investment of a substantial percentage of Plan assets in Revlon bonds to assist his son Ronald in raising capital for Revlon.  The Plan did not utilize the services of a financial advisor or consultant to analyze or monitor the investments in Revlon bonds, the trustees did not conduct any investigation into the merits of the investments, and the trustees did not monitor the investments.  (Id. ¶¶ 35, 36.)  The Plan also converted some of its Revlon bonds into stock and gave Ronald the power to vote that stock, in order to help Ronald protect Revlon against a hostile takeover.  Specifically, on or about March 15, 2004, Ronald, on behalf of Mafco Holdings, Inc., a company that he owned and/or controlled, executed a letter agreement (the "March 15 letter agreement") with Raymond and Ruth Perelman (Raymond's wife and Jeffrey's and Ronald's mother), pursuant to which Ronald became the beneficial owner of the shares of Revlon stock held by the Plan and undertook full power to vote all Revlon stock owned by the Plan.  (Id. ¶ 18.)

Forms required to be filed by the Plan with the United States Department of Labor, known as Forms 5500, for plan years 2003, 2004, and 2005 listed Raymond as the Plan Administrator.  (Id. ¶¶ 27, 38, 50.)  The Forms 5500 did not disclose that the Plan held investments in Revlon bonds. (Id. ¶¶ 32-33, 40-41, 54-55.)  Rather, the 2003 and 2004 Forms 5500 stated that 100% of Plan assets were invested in master trust accounts (Id. ¶¶ 32, 41); and the Forms 5500 from 2005 through 2009 stated that 100% of Plan assets were invested in mutual funds.  (Id. ¶¶ 53, 62, 79, 92, 108.) Independent auditors' reports appended to the Forms 5500 for 2003 through 2008 did disclose investments in Revlon bonds, but did not identify those investments as party-in-interest transactions

by the Plan.² (Id. ¶¶ 31, 40, 52, 61, 78, 91.) Specifically, the reports did not state that a controlling shareholder of Revlon (Ronald) was a lineal descendant of a fiduciary of the Plan (Raymond), or that Ronald was himself a fiduciary of the Plan by virtue of the March 15 letter agreement.³ (Id. ¶¶ 32, 43, 54.)

The 2006 Form 5500, which listed Guzek rather than Raymond as the Plan Administrator (id. ¶ 59), appended an Independent Auditor's Report containing a footnote that stated, for the first time, that a controlling shareholder of Revlon was a lineal descendant of the trustee of the Plan, and that transactions involving Revlon bonds qualified as party-in-interest transactions. (Id. ¶¶ 63, 68.) The 2006 Independent Auditor's Report did not state, however, that some of the Revlon bonds had been converted into stock, and that Ronald had himself become a fiduciary of the Plan by virtue of the March 15 letter agreement. (Id. ¶ 64.) The Independent Auditor's Reports appended to the 2007 and 2008 Forms 5500 contained similar notes with respect to the Plan's investments in Revlon bonds. (Id. ¶¶ 80, 93.) However, the Independent Auditor's Report appended to the 2008 Form 5500 did not accurately describe a February 1, 2008 investment of $2.7 million in unsecured Revlon debt. (Id. ¶¶ 81, 94.)

On February 1, 2008, Raymond, as trustee of the Plan, entered into a Participation Agreement with MacAndrews & Forbes Holdings, Inc. ("MacAndrews"), an entity principally owned by Ronald.

---

²A "Schedule of Reportable Transactions" in the 2004 Independent Auditor's Report did indicate a reportable transaction, but the 2004 Form 5500 itself stated that 100% of Plan assets were invested in master trust accounts and that there were no party-in-interest transactions in 2004. (See SAC ¶ 41-43.)

³Pursuant to 29 U.S.C. § 1002(21)(A), "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."

(Id. ¶ 116.) The Participation Agreement provided the Plan with an undivided interest of approximately $2.7 million in a January 30, 2008 Senior Subordinated Loan Agreement between MacAndrews and Revlon. (Id. ¶ 117.) Under the Senior Subordinated Loan Agreement, MacAndrews lent Revlon $170 million on the condition that Revlon use approximately $168 million to repay holders of Revlon Notes with a maturity date of February 1, 2008. (Id. ¶¶ 120-122.) The Senior Subordinated Loan Agreement provided that MacAndrews (i.e., Ronald) would retain a little over $2 million as a non-refundable fee for the financing it had provided. (Id. ¶ 123.) Without the loan from MacAndrews, Revlon could not have repaid the Note holders. (Id. ¶¶ 125-127.) The Senior Subordinated Loan Agreement was a subordinated, unsecured obligation of Revlon, and the Participation Agreement specified that it was a non-recourse agreement, which provided the Plan with no protection for its $2.7 million investment. (Id. ¶ 128.)

The Independent Auditor's Report appended to the 2008 Form 5500 reflected only investments in Revlon corporate bonds, and stated that those investments were valued on Level 1 of the Fair Value Measurement Standard, the most reliable of three levels. (Id. ¶¶ 99-100.) The Independent Auditor's Report appended to the 2009 Form 5500 did not identify or value the Plan's assets.[4] (Id. ¶ 105.) However, a Second Independent Auditor's Report, with the same date as the Independent Auditor's Report that was actually appended to the 2009 Form 5500, inaccurately characterized the Plan's interest in the Senior Subordinated Loan Agreement as an investment in Revlon corporate note receivables. (Id. ¶ 107.) The Second 2009 Independent Auditor's Report

---

[4] The 2009 Independent Auditor's Report did not disclose the nature of the Plan's investments in Revlon, nor did it identify any party-in-interest transactions. The 2009 Form 5500 listed Raymond as Plan Administrator and noted that the opinion of the Independent Auditor was disclaimed. (Id. ¶¶ 101, 104-105.)

-4-

retroactively changed the valuation of the Plan's interest in the Senior Subordinated Loan Agreement from Level 1 to Level 3, without explanation or comment. (Id. ¶ 112.) This Second Independent Auditor's Report was not filed with the Department of Labor. (Id. ¶ 109.)

The SAC also makes allegations that the Plan did not maintain updated and accurate plan documents. The Plan represented to Jeffrey that the latest Summary Plan Description was dated November 9, 1994, while Independent Auditors' Reports for 2003 to 2008 indicate the Plan was amended on February 29, 1996, and the Report for 2009 indicates an amendment on January 1, 2002. (Id. ¶¶ 162-65.) When Jeffrey asked for Plan documents in April 2010, he was told by the Plan's counsel that it was last amended and restated on January 1, 1997, but was later given amendments dated January 1, 2002, July 1, 2007, and January 1, 2008. (Id. ¶¶ 166-69.) A Trust Agreement provided by counsel, dated November 1, 2003, stated that a plan document was adopted concurrently therewith, but the Plan failed to provide to Jeffrey a plan document dated November 1, 2003. (Id. ¶¶ 172-75.) Finally, the SAC makes subordinate allegations concerning Ronald's control of Revlon (id. ¶¶ 181-85), the poor financial condition of Revlon during the operative period (id. ¶¶ 186-213), and also includes allegations regarding an SEC filing and the March 15 Letter Agreement appointing MacAndrews a proxy to vote all of the Revlon stock owned by Raymond's and Ruth's family charitable trusts (Id. ¶¶ 214-24).

Jeffrey asserts jurisdiction only under 29 U.S.C. § 1132(a)(3), the section providing for equitable remedies. (SAC ¶ 6.) The SAC asserts claims for breach of fiduciary duty, in violation of 29 U.S.C. § 1104 (Count 1 against Raymond, Count 10 against Ronald); knowing participation in prohibited party-in-interest transactions, in violation of 29 U.S.C. § 1106 (Count 2 against Raymond, Count 9 against Ronald); failure to diversify plan assets, in violation of 29 U.S.C. §

1104(a)(1) (Count 3 against Raymond, Count 6 against Jason Guzek and GRC); failure to update or maintain proper plan documents, in violation of 29 U.S.C. §§ 1024-1027 (Count 4 against Raymond, Count 7 against Guzek and GRC); improper delegation of control of plan assets, in violation of 29 U.S.C. § 1104(a)(1) (Count 5 against Raymond); failure to prosecute breach of fiduciary duty, in violation of 29 U.S.C. §§ 1104, 1105 (Count 8 against Guzek and GRC); and co-fiduciary liability (Count 11 against Ronald).

In the Prayer for Relief Clause ("PRC"), Jeffrey specifies that he seeks an order directing all Defendants to restore to the Plan any losses suffered by the Plan and any profits realized by Defendants. (PRC ¶¶ 1-7, 10-12.) Jeffrey also seeks injunctive relief that would remove Raymond and Guzek as fiduciaries of the Plan, appoint an independent trustee, order the independent trustee to hire an independent auditor to conduct an audit of the Plan for the Plan Years 2002 - 2010, and enjoin Raymond and Guzek from serving in a fiduciary capacity with regard to any employee benefit plan subject to ERISA for the rest of their lives. (Id. ¶ 8.) Jeffrey also seeks to void any provision in the Plan that grants indemnity to any trustee as against public policy. (SAC ¶ 5, PRC ¶ 9.) Finally, Jeffrey also seeks fees and costs. (PRC ¶ 13.)

**II.   LEGAL STANDARD**

In reviewing a motion to dismiss, we take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips, 515 F.3d at 233 (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)); Warth v. Seldin, 422 U.S. 490, 501 (1975) (stating that, in resolving issues of standing, a court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party). A "dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state

a claim." Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) (citations omitted). Legal conclusions receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

### III.  DISCUSSION

#### A.  Standing to Bring ERISA Claims

Defendants argue that Jeffrey lacks both constitutional and statutory standing to bring his ERISA claims. ERISA section 409 provides for a cause of action based upon breach of fiduciary duty by a plan fiduciary.[5] The rules governing ERISA fiduciaries are contained in sections 404 (imposing a reasonable man standard ) and 406 (prohibiting party-in-interest transactions). 29 U.S.C. §§ 1104, 1106. ERISA section 502(a) specifies who may bring an action for breach of

---

[5] Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a).

fiduciary duty. It provides in pertinent part:

> A civil action may be brought--
>
> > (1) by a participant or beneficiary--
> >
> > > (A) for the relief provided for in subsection (c) of this section,[6] or
> > > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> >
> > (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> >
> > (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a) (footnote added). Subsections (1) and (2) provide for monetary relief while subsection (3) provides only for equitable remedies.

"It is axiomatic that, in addition to those requirements imposed by statute, plaintiffs [in an ERISA action] must also satisfy [the standing requirements of] Article III of the Constitution." Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 455 (3d Cir. 2003) (citing Warth, 422 U.S. at 501); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (setting forth "the irreducible constitutional minimum" of Article III standing: injury-in-fact, a causal connection between the injury and the conduct complained of, and the likelihood, as opposed to the mere speculation, that the injury will be redressed by a favorable decision). The rules regarding

---

[6]Subsection (c) of § 502 applies to a Plan Administrator's refusal to supply requested information to a participant or beneficiary about the Plan. In the court's discretion such an Administrator may be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. 29 U.S.C. § 1132(c)(1).

constitutional standing differ depending upon whether the plaintiff is seeking money damages or equitable relief. Where an ERISA plaintiff seeks money damages for breach of fiduciary duty, he must allege individual loss or injury to satisfy Article III standing.[7] In contrast, the United States Court of Appeals for the Third Circuit has determined that a plan participant may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm to the participant. Horvath, 333 F.3d at 456 (stating "with regard to injunctive relief, it is well-established that '[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" (alteration in original) (quoting RJG Cab, Inc. v. Hodel, 797 F.2d 111, 118 (3d Cir. 1986); accord, Cent. States, 433 F.3d at 199-200 (citing Horvath 333 F.3d at 456-57); Kendall, 561 F.3d 112, 120 (noting the holding of Horvath); see also Ziegler v. Conn. Gen. Life Ins. Co., 916 F.2d 548, 551 (9th Cir. 1990) (finding that "Congress intended to make fiduciaries culpable for certain ERISA violations even in the absence of actual injury to a plan or participant" (citations omitted)). Accordingly, courts hold that when plan participants seek injunctive relief under § 1132(a)(3) for violations of ERISA's fiduciary requirements, they can demonstrate Article III standing by only

---

[7]See Horvath, 333 F.3d at 456 (finding that plaintiff's requests for restitution and disgorgement were individual in nature and therefore required plaintiff to demonstrate individual loss to satisfy Article III standing); Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 200 (2d Cir. 2005) (citations omitted); Kendall v. ERISA Plan of Avon Prods., 561 F.3d 112, 119-120 (2d Cir. 2009) (noting that while the Third Circuit has held that a plan participant may have Article III standing to obtain injunctive relief without a showing of individual harm, requests for restitution and disgorgement under ERISA require that plaintiffs meet the injury-in-fact requirement of Lujan; agreeing with the holding of Horvath that claims seeking payments to plan participants, and disgorgement are not equitable claims) (citations omitted); see also Bollig v. Christian Cmty. Homes & Servs., Inc., No. 02-C-532-C, 2003 WL 23200362, at *2 (W.D. Wis. July 10, 2003) (finding that although a plaintiff seeking injunctive relief may have Article III standing without a showing of actual harm, requests for monetary damages require a plaintiff to demonstrate individual loss) (citations omitted).

showing a violation of ERISA and need not prove actual harm. See Horvath, 333 F.3d at 456 (finding that plaintiff "need not demonstrate actual harm in order to have standing to seek injunctive relief requiring that [defendant] satisfy its statutorily-created disclosure or fiduciary responsibilities.") (citing, among other cases, Fin. Inst. Ret. Fund v. Office of Thrift Supervision, 964 F.2d 142, 149 (2d Cir. 1992) (noting that "ERISA's goal of deterring fiduciary misdeeds" supports a "broad view of participant standing under ERISA")); see also Cent. States, 433 F.3d at 199-200 (quoting Horvath, 333 F.3d at 456-57); Shaver v. Operating Eng'rs Local 428 Pension Trust Fund, 332 F.3d 1198, 1203 (9th Cir. 2003) (holding that no showing of individual harm is necessary where plaintiffs seek purely equitable relief to enjoin future misconduct). As the Ninth Circuit explained in the context of a motion to dismiss for failure to state a claim for injunctive relief to cure a breach of fiduciary duty:

> Requiring a showing of loss in such a case would be to say that the fiduciaries are free to ignore their duties so long as they do no tangible harm, and that the beneficiaries are powerless to rein in the fiduciaries' imprudent behavior until some actual damage has been done. This result is not supported by the language of ERISA, the common law, or common sense.

Shaver, 332 F.3d at 1203.

The Supreme Court has also made clear that ERISA plaintiffs seeking certain types of equitable relief must still show actual harm. In this regard, the Court held that the "appropriate equitable relief" referred to in ERISA § 502(a)(3) includes those categories of relief "that, traditionally speaking (*i.e.*, prior to the merger of law and equity) 'were *typically* available in equity,'" but also stated that a party who seeks money damages as part of one's equitable relief must show actual harm. Cigna Corp. v. Amara, ___ U.S. ___, 131 S. Ct. 1866, 1878 (2011) (quoting Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 361 (2006)). The claim before the Court in

Cigna Corp.

> concern[ed] a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust). . . . It is the kind of lawsuit that, before the merger of law and equity, respondents could have brought only in a court of equity, not a court of law.

113 S. Ct. at 1879 (parentheticals in original). The Court held that the district court's affirmative and negative injunctions – ordering the terms of the ERISA plan reformed, and ordering the plan administrator to enforce the plan as reformed – obviously fell within the category of equitable relief. Id.[8] However, the Court went on to specify that requiring a fiduciary to pay money damages as part of an equitable remedy under § 502(a)(3) for breach of fiduciary duty could be made

> only upon a showing of actual harm. . . . We believe that, to obtain relief by surcharge for violations of §§ 102(a) and 104(b), a plan participant or beneficiary must show that the violation injured him or her. But to do so, he or she need only show harm and causation. Although it is not always necessary to meet the more rigorous standard implicit in the words "detrimental reliance," actual harm must be shown.

Id. at 1881-82.

Here, Jeffrey includes in the opening paragraphs of the SAC and in the PRC only boilerplate

---

[8]The specific question presented to the Court was whether the district court erred in concluding that it had power under § 501(a)(1)(B) to alter the terms of an ERISA plan. The Court concluded that this section did not authorize a court to alter the terms of an ERISA plan. Cigna Corp., 131 S. Ct. at 1876-77. However, the Court concluded that the district court's remedy was proper under the equitable relief provision of § 501(a)(3). Id. at 1880.

According to the Court, (1) the power to reform the plan, like the power to reform contracts, was a traditional power of the equity courts used to prevent fraud; (2) the remedy essentially held Cigna to what it had promised the participants, i.e., a remedy resembling estoppel; and (3) the power to order the administrator to pay already retired beneficiaries the higher benefits of the reformed plan – although a specie of money damages – was similar to the equitable remedy of surcharge "extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." Id. at 1879-80.

In dissent, Justice Scalia took the majority to task for engaging wholly in dicta in addressing a question not presented in the appeal and which the lower courts did not address, namely, whether the ordered relief was proper under § 502(a)(3). Id. at 1883-85 (Scalia, dissenting).

recitations regarding "losses,"[9] but does **not** allege that the Plan suffered any monetary loss, such as diminution in the value of Plan assets, diminution in the benefits Jeffrey will receive from the Plan, or any risk that the Plan will default on its future obligations to participants, as a result of the Plan's investments in Revlon. Thus, there is no cognizable claim stated for monetary loss. With regard to equitable relief, Jeffrey specifies that he seeks injunctive relief that would remove Raymond and Guzek as fiduciaries of the Plan, appoint an independent trustee, order the independent trustee to hire an independent auditor to conduct an audit of the Plan for the Plan Years 2002 - 2010, excise language in the Plan indemnifying fiduciaries, and enjoin Raymond and Guzek from serving in a fiduciary capacity with regard to any employee benefit plan subject to ERISA for the rest of their lives. (Prayer for Relief Clause ¶ 8.) We find that these could constitute claims for "appropriate equitable relief" under ERISA § 502(a)(3), for which Jeffrey need not show individual injury under Horvath. However, Jeffrey also seeks an order directing all Defendants to restore to the Plan any losses suffered by the Plan and disgorge any profits realized by Defendants, as well as attorneys fees. (PRC ¶¶ 1-7, 10-12.) While an action for disgorgement of improper profits is an equitable remedy, see Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 352 (1998) (citing Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 570-571 (1990)),[10] under the holding in Cigna Corp., to seek such relief actual harm must be demonstrated. Accordingly, we find that,

---

[9]See SAC ¶¶ 1-3 reciting that the claims are brought pursuant to ERISA "for losses suffered by the Pension Plan." The PRC echoes this assertion.

[10]Disgorgement is an equitable remedy because the money damages are restitutionary. Chauffeurs, Teamsters and Helpers, Local No. 391, 494 U.S. at 570 citing Tull v. United States, 481 U.S. 412, 424 (1987). When money damages are compensatory or punitive in nature they fall under the "general rule" that monetary relief is legal. Terry at 570; Tull at 422 (stating that "[r]emedies intended to punish culpable individuals . . . were issued by courts of law, not courts of equity").

Jeffrey's status as a plan participant is sufficient to establish his Article III standing to seek removal of the fiduciaries, reformation of the indemnity provisions in the Plan, the appointment of an independent trustee, an audit of the Plan, and to enjoin Raymond and Guzek from serving as ERISA fiduciaries in the future. However, because he has failed to allege any actual injury, we dismiss his claims seeking restoration of losses and disgorgement of profits as part of an equitable remedy.

  B. Removal of Trustees

Because we find that Jeffrey has standing to seek the removal of the Plan fiduciaries, we must also address Raymond's and Guzek's argument that the SAC fails to state breach of fiduciary duty claims upon which relief may be granted. Citing to the Restatement (Second) of Trusts and various legal treatises, Defendants argue that the mere fact that a trustee has committed a breach of trust is insufficient to warrant removal unless that breach was "serious." (Def. Mem. In Support of Mot. To Dismiss for Failure to State a Claim ("Def. 12(b)(6) Mem.") at 14 (citing A. Scott, et al., Scott and Ascher on Trusts (5th Ed. 2007) § 11.10, at 661 (stating that mere fact that a trustee has committed a breach of trust is insufficient to warrant removal); Restatement (Second) of Trusts § 107, comment b (providing that among the grounds for removal of a trustee is "the commission of a serious breach of trust")).) They argue that the removal of an ERISA trustee is an extraordinary remedy that has been employed only where there have been "'very egregious breaches, and often repeated and substantial violations of [the trustees'] responsibilities.'" (Id. at 15 (quoting Bidwell v. Garvey, 743 F. Supp. 393, 399 (D. Md. 1990) and citing S. Rep. No. 383, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 4890, 4989 ("It is expected that a fiduciary . . . may be removed for repeated or substantial violations of his responsibilities. . . .")))). They contend that Jeffrey has alleged no facts to support his assertion that the Plan is actually endangered or that there was a

serious breach of Raymond's or Guzek's duties.[11]  (Def. 12(b)(6) Mem. at 15.)  We find to the contrary that Jeffrey has sufficiently pled his claim for breach of fiduciary duty.

Removal of an ERISA trustee for having breached a fiduciary duty is expressly provided for by ERISA section 409(a), 29 U.S.C. § 1109(a).  Courts generally agree that the removal of trustees is an extraordinary remedy to be applied only when the trustees have engaged in repeated or substantial violations of their fiduciary duties.  See, e.g., Katsaros v. Cody, 744 F.2d 270, 281 (2d Cir. 1984) (holding that ERISA trustees' approval of a loan – where no trustee had sufficient training to express an opinion on the soundness of the loan and where there was ample information available to trustees that showed loan recipient had no ability to repay it, in circumstances where trustees had been previously enjoined from making suspect loans – justified removal); Delgrosso v. Spang & Co., 769 F.2d 928, 937 (3d Cir. 1985) (holding that removal and replacement of a fund administrator under ERISA was appropriate where the administrator was in substantial violation of his fiduciary duties by fashioning a plan which, contrary to the express terms of the pension agreement, would result in a reversion of assets to the employer rather than to the participants in the fund for whose exclusive benefit the fund was required to be managed (citing Katsaros, 744 F.2d at 281)); Faircloth v. Lundy Packing Co., 91 F.3d 648, 659 n.6 (4th Cir. 1996) (holding that conduct consisting of delaying providing financial data and copies of third party contracts to participant did not warrant

---

[11]We note that Defendants also argue in their Motion to dismiss that Jeffrey has not "come forward with clear proof of any other substantial reason for removal.  Quite to the contrary, the undisputed evidence demonstrates that the Plan is fully funded under the two mathematical formulas used to determine whether a plan is likely to have sufficient assets to meet all of its benefit obligations."  (Def. 12(b)(6) Mem. at 15.)  This is not a proper argument under Rule 12(b)(6).  To defeat a motion to dismiss a plaintiff does not need to "come forward with clear proof."  He is required to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).

removal of ERISA trustee where breaches were not substantial or repeated (citing *inter alia* Katsaros, 744 F.2d at 281)); see also Shaver, 332 F.3d at 1203 (stating that trustees may be removed for imprudent, but not necessarily improper, conduct).

We find that the SAC contains sufficient factual matter, accepted as true, to state a plausible claim for removal of the trustees. Jeffrey asserts that Raymond and Guzek repeatedly and seriously violated their fiduciary duties by, *inter alia*, (1) investing Plan assets in Revlon bonds at a time when that company was substantially over-leveraged and assigned poor credit ratings on its corporate bonds; (2) directing the investment in order to assist Raymond's son, Ronald; (3) not utilizing the services of a financial advisor or consultant to analyze or monitor the Revlon investments, conduct any investigation into the merits of the investments, or monitor the investments; (4) converting Revlon bonds into stock to benefit Ronald, and giving Ronald the power to vote that stock, in order to help Ronald protect Revlon against a hostile takeover; (5) not disclosing on Forms 5500 that the Plan held investments in Revlon bonds, while stating falsely that 100% of Plan assets were invested in master trust accounts or mutual funds; (6) submitting in 2006 a Form 5500 that disclosed for the first time that a controlling shareholder of Revlon was a lineal descendant of the trustee of the Plan, and that transactions involving Revlon bonds qualified as party-in-interest transactions, but not disclosing that some of the Revlon bonds had been converted into stock in a transaction that benefitted Ronald; and (7) entering into the subordinated, unsecured loan with an entity controlled by Ronald, which allowed Revlon to refinance its corporate notes and resulted in Ronald getting a substantial fee.

The only argument Defendants raise in support of dismissing the claim seeking the trustees' removal are their assertions that, notwithstanding their alleged misuse of Plan assets to benefit

Ronald, (1) Jeffrey has suffered no injury because the Plan remains fully funded and able to meet all of its benefit obligations, and (2) the Plan no longer owns Revlon bonds. However, as we discussed above in considering Defendants' standing arguments, Jeffrey does not need to plead or prove that the Defendants' breach of fiduciary duties caused the Plan to suffer a financial injury in order to state a claim for this type of purely injunctive relief. Defendants' assertion that the Plan currently owns no investment in Revlon is immaterial; the SAC seeks removal of the trustees based upon their prior actions, not upon an allegation that they will continue to breach their fiduciary duties if left in office.

Accordingly, the motion to dismiss, insofar as its seeks dismissal of the claim for injunctive relief seeking the removal of Raymond and Guzek as trustees, is denied.

        C.        Claims Against Ronald

Ronald is named as a defendant in Count 10's claim for breach of fiduciary duty, Count 9's claim for knowing participation in a prohibited party-in-interest transaction, and Count 11's claim for co-fiduciary liability based upon his power to vote the Revlon stock owned by the Plan. The only relief sought against Ronald is repayment to the Plan of its lost profits and disgorgement to the Plan of any profits realized by him or Revlon by his allegedly knowing participation in the prohibited party-in-interest transactions wherein (1) Plan assets were used to purchase Revlon bonds and (2) Ronald obtained full and unfettered voting power of Plan assets invested in Revlon. (PRC ¶¶ 10-12.)

To establish standing to bring these claims for monetary relief, it was incumbent on Jeffrey to adequately plead that he or the Plan suffered financial loss. As noted, other than boilerplate recitations in its opening paragraphs and in the PRC, the SAC does **not** allege that Jeffrey or the Plan suffered any monetary loss, such as diminution in the value of Plan assets, diminution in the benefits Jeffrey will receive from the Plan, or any risk that the Plan will default on its future obligations to

participants, as a result of the Plan's investments in Revlon. Because all the claims against Ronald seek money damages, and it is clear under the holdings in <u>Cigna Corp.</u> and <u>Horvath</u> that any claim requiring an alleged fiduciary to pay money damages as part of an equitable remedy under § 502(a)(3) for breach of fiduciary duty can be made only upon an allegation of actual harm, we conclude that all claims against Ronald must be dismissed.

## IV.   CONCLUSION

Jeffrey has standing to seek the appropriate equitable relief of removal of the fiduciaries, auditing of the Plan, excising of the trustee indemnity language, and enjoining Raymond and Guzek from serving as fiduciaries in the future. He also has standing to enforce his ERISA created right to accurate plan documents. He has not, however, established standing to seek monetary forms of equitable relief. Accordingly, we grant the Motion to dismiss in part, dismissing in their entirety Counts 9, 10 and 11 against Ronald, and striking PRC ¶¶ 1-7, and 10-12.[12]

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

John R. Padova, J.

---

[12]Because the issue was not specifically addressed in the pending Motions, we express no opinion at this time whether Jeffrey is entitled to an award of fees and costs, as requested in PRC ¶ 13.