IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY E. PERELMAN           :           CIVIL ACTION
                                   :
        v.                  :
                                   :
RAYMOND  G.  PERELMAN,     :
JASON GUZEK, and GENERAL     :
REFRACTORIES COMPANY      :           NO. 10-5622

## MEMORANDUM

**PADOVA, J.**                                          **January 24, 2013**

Presently before the Court is a Motion by Defendant General Refractories Company ("GRC") for Judgment on the Pleadings on Plaintiff Jeffrey Perelman's ("Jeffrey") Second Amended Complaint. (Docket No. 106). Also before the Court is a similar Motion filed by Defendants Raymond Perelman ("Raymond") and Jason Guzek ("Guzek"). (Docket No. 107). After those Motions were filed, Jeffrey filed a Motion for Leave to File a Third Amended Complaint. (Docket No. 109). For the following reasons, we deny Jeffrey's Motion and grant Defendants' Motions in part.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The allegations contained in the Second Amended Complaint ("SAC") were fully set out in our Opinion of August 27, 2012 ("the August Opinion"), and we repeat them here only briefly. In the SAC, Jeffrey only asserted claims for injunctive relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the provision permitting equitable claims by plan participants for breach of fiduciary duties. He alleged that his father Raymond, as trustee of the General Refractories Company Pension Plan ("the Plan"), improperly invested Plan assets in the corporate bonds of Revlon, Inc. (together with Revlon Consumer Products Corporation, collectively "Revlon"), a company controlled by his brother Ronald Perelman ("Ronald"), during a time period in which

Revlon was substantially over-leveraged and had poor credit ratings assigned to its corporate bonds. (SAC ¶¶ 37, 49 74, 88.) He also alleged that Raymond entered into a Participation Agreement with MacAndrews & Forbes Holdings, Inc. ("MacAndrews"), an entity principally owned by Ronald. (Id. ¶ 116.) The Participation Agreement provided the Plan with a $2.7 million undivided interest in a Senior Subordinated Loan Agreement between MacAndrews and Revlon, under which MacAndrews loaned Revlon $170 million, and permitted MacAndrews (i.e. Ronald) to retain approximately $2 million as a non-refundable fee. (Id. ¶¶ 117, 120-23.) The Plan also converted some of its Revlon bonds into stock and gave Ronald the power to vote that stock, in order to help Ronald protect Revlon against a hostile takeover; Ronald thus became the beneficial owner of the shares of Revlon stock held by the Plan, and undertook full power to vote all Revlon stock owned by the Plan. (Id. ¶ 18.)

Jeffrey also alleged that Forms 5500 for plan years 2003-2005, listing Raymond as the Plan Administrator, did not disclose that the Plan held investments in Revlon bonds, but rather asserted that all Plan assets were invested in master trust accounts. (Id. ¶¶ 27, 32-33, 38, 40-41, 50, 54-55.) The Forms 5500 from 2005 through 2009 stated that 100% of Plan assets were invested in mutual funds. (Id. ¶¶ 53, 62, 79, 92, 108.) Independent auditors' reports appended to the Forms 5500 for 2003 through 2008, while disclosing investments in Revlon bonds, did not, *inter alia*, identify those investments as party-in-interest transactions by the Plan, did not disclose the relationship between Ronald and Raymond, and did not disclose that Ronald was himself a fiduciary of the Plan by virtue of his power to vote stock held by the Plan. (Id. ¶¶ 31-32, 40, 43, 52, 54, 61, 78, 91.)

In our August Opinion deciding the Defendants' Motions to Dismiss the SAC, we held that the SAC adequately alleged that Jeffrey had standing to seek certain injunctive relief, as well

as standing to enforce his ERISA-created right to accurate plan documents. However, we rejected Jeffrey's argument that he established standing to seek monetary forms of equitable relief in the forms of disgorgement and restitution. Accordingly, we granted the Motions to Dismiss in part, dismissing in their entirety the claims against Ronald, which sought only money damages, and striking those clauses of the SAC's Prayer for Relief clause that requested monetary relief against the other defendants.

GRC then filed the pending Motion for Judgment on the Pleadings (Docket No. 106). Raymond and Guzek jointly filed a similar Motion (Docket No. 107). Thereafter, Jeffrey filed the pending Motion for Leave to File a Third Amended Complaint (Docket No. 109), in which he seeks to rejoin Ronald and, for the first time, add additional claims seeking monetary relief against all parties pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

In the proposed Third Amended Complaint ("TAC"), Jeffrey makes additional allegations based upon an Amended Form 5500 filed by the Plan for 2010, as well as an application submitted by Raymond to the United States Department of Labor's Voluntary Fiduciary Correction Program ("VFCP"). He alleges that, by virtue of the improper dealings in Revlon, the Plan is currently underfunded. Specifically, he alleges that the Amended Form 5500 shows that Plan's funding ratio has diminished on an actuarial basis from 105.41% in 2009 to 95.72% in 2011, and on a market value analysis, the Plan was only 83% funded as of December 31, 2011. (TAC ¶¶ 248-49.) He also alleges that the 2010 filing demonstrates a significant deficiency in all previous Forms 5500 filed for the Plan: while each prior Form from 2003 to 2009 stated that 100% of assets were invested in registered investment companies, the 2010 Amended Form reflects that only approximately $5 million of the Plan's total assets of approximately $12.9 million were invested in registered investment companies. (Id. at ¶¶ 253-

56.)  Jeffrey alleges that it is inconceivable that the nature of the investments changed so significantly, calling into question the veracity of the prior filings.  (Id. at ¶ 257.)

The TAC alleges that the admissions contained in the VFCP application reveal numerous inadequacies in Raymond's administration of the Plan, which required Raymond to pay money to the Plan to correct the breaches of his fiduciary duties.  Jeffrey alleges that Raymond's action to cure the prohibited party-in-interest transactions was itself another prohibited party-in-interest transaction since, rather than selling the Revlon bonds, he converted them into Revlon stock via a "call" on the bonds.  (Id. at ¶¶ 274-81.)  He also asserts that the "corrective amount" that Raymond remitted with the application in regard to that transaction, $270,446.42, did not fully reimburse the Plan for the $3,170,612.98 loss in principal that Raymond himself declared in the application, and there was no restoration of lost profits or restoration of the party-in-interests' investment return.  (Id. at ¶¶ 282-85.)  Concerning the MacAndrews Participation Agreement, Jeffrey alleges that the VFCP application reported lost earnings of $621,351.44, which exceeded the profit that the Plan earned on the investment, but the corrective amount remitted was $0.  (Id. at ¶¶ 289-98.)  Jeffrey also asserts that no corrective amounts were remitted to account for losses incurred in connection with three other prohibited transactions identified in the VFCP application.  (Id. at ¶ 303.)  He alleges that "[u]pon information and belief, this significant diminution in the value of the assets of the Pension Plan **jeopardizes** the ability of the Pension Plan to provide continued pension benefits to its participants and beneficiaries."  (TAC ¶¶ 426, 434, 447, 460, 473, 485 (emphasis added).)

## II.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND

### A.    Standard of Review

Granting leave to amend is within the discretion of the district court.  Zenith Radio Corp.
v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971).  Courts should "freely give leave" for a
party to file an amended pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The
United States Court of Appeals for the Third Circuit has stated that leave "must generally be
granted unless equitable considerations render it otherwise unjust."  Arthur v. Maersk, Inc., 434
F.3d 196, 204 (3d Cir. 2006) (citing Foman v. Davis, 371 U.S. 178, 182 (1962).  A court may
deny leave to amend when "(1) the moving party has demonstrated undue delay, bad faith or
dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the
other part[ies]."  Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000); see also Lorenz v. CSX
Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) ("In the absence of substantial or undue prejudice,
denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay,
repeated failures to cure the deficiency by amendments previously allowed, or futility of
amendment." (citation omitted)).  To determine futility, we apply the same analysis that would
govern a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  See In re Burlington Coat Factory
Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  "'Futility' means that the complaint, as
amended, would fail to state a claim upon which relief may be granted."  Id.  "If a proposed
amendment is not clearly futile, then denial of leave to amend is improper."  6 Charles Alan
Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1487 (4th ed.
2010).

     B.     Standing to Bring a § 502(a)(2) Claim

The "irreducible constitutional minimum" of Article III standing consists of an injury-in-
fact, a causal connection between the injury and the conduct complained of, and the likelihood,
as opposed to the mere speculation, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The injury-in-fact requirement exists to ensure that litigants have a personal stake in the litigation. The Pitt News v. Fisher, 215 F.3d 354, 360 (3d Cir. 2000). The requirement is very generous, requiring only that the claimant allege some specific, identifiable trifle of injury. Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 291 (3d Cir. 2005) (noting that "[w]hile it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms"); see also Bowman v. Wilson, 672 F.2d 1145, 1151 (3d Cir. 1982); United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 689 n.14 (1973) (recognizing that "an identifiable trifle is enough"); Gen. Instrument Corp. v. Nu–Tek Elects. & Mfg., Inc., 197 F.3d 83, 87 (3d Cir. 1999) (same); Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 71 (3d Cir. 1990) (same). The Supreme Court has made clear that, while Congress can identify those persons whom it intends to be protected by a statute, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." Summers v. Earth Island Inst., 555 U.S. 488, 496 (2009).

To bring an ERISA lawsuit a plan participant must not only satisfy standing under the statute, but must also meet the standing requirements of Article III. See Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 455 (3d Cir. 2003) (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)); accord, Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 199 (2d Cir. 2005); Kendall v. Employees Retirement Plan of Avon Prods., 561 F.3d 112, 118 (2d Cir. 2009) (citing Cent. States, 433 F.3d at 199). In deciding the earlier dispositive motions, we noted that "[t]he rules regarding constitutional standing differ depending upon whether the plaintiff is seeking money damages or equitable relief. Where an ERISA plaintiff seeks money damages for breach of fiduciary duty, he must

allege individual loss or injury to satisfy Article III standing." August Opinion at 8-9 (citing Horvath, 333 F.3d at 456 (finding that the plaintiff's requests for restitution and disgorgement were individual in nature and therefore required the plaintiff to demonstrate individual loss to satisfy Article III standing)). In contrast, with respect to the SAC's claims for injunctive relief, the Horvath court established that "'[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" Horvath, 333 F.3d at 456 (alteration in original) (quoting RJG Cab, Inc. v. Hodel, 797 F.2d 111, 118 (3d Cir. 1986) (quoting Warth, 422 U.S. at 499-500)). Thus, we determined that the SAC's allegations of inappropriate party-in-interest transactions were sufficient to permit Jeffrey standing to pursue claims for injunctive relief under § 502(a)(3).

However, the TAC's claims for monetary relief under § 502(a)(2) require that Jeffrey allege an injury-in-fact. As a beneficiary to a defined benefit pension plan, he cannot establish standing to sue on behalf of the Plan absent a plausible allegation that the breach of fiduciary duty created or enhanced a risk of default by the entire plan. See LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 255 (2008) (stating that "Misconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan. It was that default risk that prompted Congress to require defined benefit plans (but not defined contribution plans) to satisfy complex minimum funding requirements, and to make premium payments to the Pension Benefit Guaranty Corporation for plan termination insurance."). In a defined benefit plan:

> "the employee, upon retirement, is entitled to a fixed periodic payment." . . . [T]he employer typically bears the entire investment risk and — short of the consequences of plan termination — must cover any underfunding as the result of a shortfall that may occur from the plan's investments. . . . Given the employer's obligation to make up any shortfall, no plan member has a claim to any particular asset that composes a part of the plan's general asset

> pool. . . . Since a decline in the value of a plan's assets does not alter accrued benefits, members similarly have no entitlement to share in a plan's surplus. . . ."

Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 439-40 (1999) (citations and quotation omitted). Where a defined benefit plan suffers losses, plan participants cannot establish standing to seek money damages where the plan has substantial surplus assets or the plan sponsor is financially capable of making up any losses suffered by the plan. Harley v. Minnesota Min. and Mfg. Co., 284 F.3d 901, 906 (8th Cir. 2002) (stating that, in a defined benefit plan, "if plan assets are depleted but the remaining pool of assets is more than adequate to pay all accrued or accumulated benefits, then any loss is to plan surplus. . . . If the Plan's surplus disappears, it is [the Plan sponsor] 3M's obligation to make up any underfunding with additional contributions. . . . Thus, the reality is that a relatively modest loss to Plan surplus is a loss only to 3M, the Plan's sponsor."). This is because:

> "[t]he primary purpose of [ERISA] is the protection of individual pension rights." H.R. REP. NO. 93-533 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4639. Thus, the basic remedy for a breach of fiduciary duty is "to restor[e] plan participants to the position in which they would have occupied but for the breach of trust." Martin v. Feilen, 965 F.2d 660, 671 (8th Cir. 1992) (quotation omitted). Here, the ongoing Plan had a substantial surplus before and after the alleged breach and a financially sound settlor responsible for making up any future underfunding. The individual pension rights of Plan participants and beneficiaries are fully protected. Indeed, those rights would if anything be adversely affected by subjecting the Plan and its fiduciaries to costly litigation brought by parties who have suffered no injury from a relatively modest but allegedly imprudent investment. Thus, the purposes underlying ERISA's imposition of strict fiduciary duties are not furthered by granting plaintiffs standing to pursue these claims.

Harley, 284 F.3d at 907.

While Jeffrey alleges that the Plan suffered losses causally related to Raymond's alleged mismanagement of the Plan resulting in a diminution in the value of its assets, and that the Plan is currently underfunded, he does not allege in the TAC that he or any other Plan beneficiary has

been denied any payment currently due, or that the Plan sponsor is unable to adequately fund the Plan so that the Plan will be unable to meet its future obligations. Rather, he alleges only that "[u]pon information and belief, this significant diminution in the value of the assets of the Pension Plan **jeopardizes** the ability of the Pension Plan to provide continued pension benefits to its participants and beneficiaries." (TAC ¶¶ 426, 434, 447, 460, 473, 485 (emphasis added).) Because the TAC does not plausibly allege that the Plan is unable to meet its obligations to pay all vested benefits, and thus that Jeffrey or the Plan has suffered an injury-in-fact that is causally related to the charged conduct, we find that he lacks standing to bring the new claims for monetary relief under ERISA § 502(a)(2), rendering futile his attempt to amend the Complaint to add claims for money damages. The "information and belief" allegations that the diminution in the value of the Plan assets "jeopardizes" the Plan's ability to provide continued pension benefits to its participants is too speculative to provide standing to pursue § 502(a)(2) claims for money damages. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . ." (citations omitted)). The only specific allegation that Jeffrey makes regarding the scope of the underfunding is that the Amended Form 5500 shows that Plan's funding ratio has diminished on an actuarial basis from 105.41% in 2009 to 95.72% in 2011, and on a market value analysis, the Plan was only 83% funded as of December 31, 2011. (TAC ¶¶ 248-49.) As Defendants point out, however, under the requirements established by Congress in the Pension Protection Act of 2006, a plan is only considered to be "in at-risk status for a plan year if" the statutory funding ratio is "less than 80 percent." 29 U.S.C. § 1083(i)(4)(A). If that occurs, it is the obligation of the plan sponsor to make sufficient additional contributions pursuant to § 1083(i)(1)(A), to cure the underfunding. 29 U.S.C. § 1082(a). Jeffrey makes no allegations that the scope of the losses

that the Plan suffered placed it "in at-risk status" under the statute. More importantly, the proposed TAC does not allege that GRC, the Plan sponsor, is financially compromised and thus unable to adequately fund the Plan so that it may meet its future obligations to pay all vested benefits. To the extent that the Plan suffered a diminution in the value of its assets due to Raymond's alleged breach of his fiduciary duties, GRC is legally obligated to make additional contributions to the Plan to the extent that the losses exceed the Plan's surplus. Id. Thus, while GRC may theoretically have standing to pursue a claim for the diminution in value, an issue upon which we express no opinion, Jeffrey and the other Plan participants do not. Accordingly, we find that the proposed amendment to add legal claims for money damages under § 502(a)(2) is futile; we thus deny the Motion for Leave to Amend.[1]

## IV. DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

In our August Opinion, we held that Jeffrey has standing to seek certain equitable relief under ERISA § 502(a)(3). We also held that he has standing to enforce his ERISA-created right to accurate plan documents. In their current Motions for Judgment on the Pleadings,[2] GRC and

---

[1]Because we determine *infra* that Jeffrey's request for an audit of the Plan may proceed in part, we find that the newly appointed ERISA trustee, Reliance Trust Company, is a required party pursuant to Fed. R. Civ. P. 19. Accordingly, while we deny the Motion for Leave to Amend, we order pursuant to Rule 19(a)(2) that the newly appointed ERISA trustee be made a party defendant.

[2]GRC styles its Motion alternatively as one under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or under Rule 12(c) for judgment on the pleadings. Raymond and Guzek invoke only Rule 12(c). There are two types of motions to dismiss for lack of subject matter jurisdiction that may be made pursuant to Rule 12(b)(1), "those that attack the complaint on its face and those that attack subject matter jurisdiction as a matter of fact." Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006). When a facial attack has been made, the court must consider the allegations of the complaint as true in the same manner as if it were deciding a motion under Rule 12(b)(6). Id. (citation omitted). However, a factual attack:

> differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction . . . there is substantial authority that the trial

Raymond and Guzek argue that some of the relief Jeffrey seeks on the remaining claims of the SAC has been rendered moot by subsequent factual developments, or fail to state claims upon which relief may be granted.

A.    Removal of Trustees/Appointment of an Independent Trustee

Attached to GRC's Motion are (1) a corporate resolution dated September 18, 2012, executed by Raymond, terminating himself as Trustee of the Plan and appointing Reliance Trust Company as the sole trustee of the Plan (GRC's Statement of Undisputed Facts, Ex. E); (2) an Investment Advisory Agreement under which GRC retained the services of InR Advisory

---

court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

Id. (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). GRC asserts that its mootness argument is factual attack on jurisdiction. (Def. Mem. at 5).
    Under Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is identical to that of the motion to dismiss under Rule 12(b)(6). Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted); Katzenmoyer v. City of Reading, 158 F. Supp. 2d 491, 496 (E.D. Pa. 2001). The only notable difference between these two standards is that the court, on a motion for judgment on the pleadings, reviews not only the complaint but also the answer and any written instruments and exhibits attached to the pleadings. 2 Moore's Fed. Practice Civil § 12.38 (3d ed. 2012); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (stating that in deciding a motion for judgment on the pleadings on the basis of failure to state a claim, the Court should consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and "undisputedly authentic" documents the defendant has attached to the motion when the plaintiff's claims are based on the documents); Zucker v. Quasha, 891 F. Supp. 1010, 1013 (D.N.J. 1995) (holding that courts may consider documents to which plaintiff refers in the complaint); see also Goodwin v. Elkins & Co., 730 F.2d 99, 113 (3d Cir. 1984) (Becker, J., concurring) ("A contrary holding would enable plaintiffs to survive a 12(b)(6) motion where the terms of the document on which the claim is based would render the complaint insufficient as a matter of law, simply by refusing to attach the document to the complaint.").

Services LLC ("InR") to act as an ERISA investment manager for the Plan, to be responsible for the investment and reinvestment of the Plan's assets, and under which GRC delegated all of its powers with regard to the investment of Plan assets (id., Ex. F); (3) a Plan Sponsor Agreement under which GRC retained TD Bank to be custodian of the Plan's assets (id., Ex. G); (4) a Trust Agreement for the Plan under which Reliance Trust Company is appointed sole trustee of the Plan (id., Ex. H); and (5) a corporate resolution dated September 27, 2012, executed by Raymond, amending the Plan to provide that no trustee may be "'related or subordinate' . . . [to] any shareholder, partner, member, owner, director, trustee, board member, officer, and/or individual involved in the management of [GRC].'"  (Id., Ex. I.)  Defendants argue that the removal of Raymond and Guzek as Trustee and Administrator respectively of the Plan, and the appointment of Reliance Trust Company as trustee of the Plan, render Jeffrey's claims for equitable relief seeking their removal and the appointment of an independent trustee moot.[3]

A court has no subject matter jurisdiction over a claim that has become moot.  See Weiss v. Regal Collections, 385 F.3d 337, 340 (3d Cir. 2004) ("When the issues presented in a case are no longer 'live' or the parties lack a legally cognizable interest in the outcome, the case becomes moot and the court no longer has subject matter jurisdiction." (citation omitted)).  The "mootness doctrine is centrally concerned with the court's ability to grant effective relief."  Cty. of Morris v. Nationalist Movement, 273 F.3d 527, 533 (3d Cir. 2001).  Stated differently, "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake

_____

[3]We note that the GRC corporate resolution does not state that Guzek has been removed as Administrator of the Plan.  However, because (1) InR has been appointed the Plan's fiduciary and investment advisor, (2) the documents appointing Reliance as the new Plan trustee specify that only Jeffrey M. Hugo of InR has "the authority to instruct or direct the Trustee/Custodian . . . on matters of the plan including, but not limited to distributions, investments, legal and tax matters," (see GRC's Statement of Undisputed Facts, Ex. H) and (3) Jeffrey makes no contention that Guzek remains a Plan fiduciary, we accept as uncontested Defendants' assertion that Guzek is no longer a Plan fiduciary.

in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Id. (citation omitted). In broad terms, a defendant's action that "accords all the relief demanded by the plaintiff" moots the claim. See 13B Charles Alan Wright et al., Federal Practice and Procedure § 3533.2 (4th ed. 2011). This is because "[s]o long as nothing further would be ordered by the court, there is no point in proceeding to decide the merits." Id.

In his response, Jeffrey makes no specific argument challenging Defendants' legal contention that the claims for relief seeking the removal of Raymond and Guzek as Plan Trustee and Administrator respectively and the appointment of an independent trustee have been rendered moot by Raymond's resignation and the appointment of an independent trustee, financial advisor and custodian. Neither does he contest the documents that establish the factual basis for GRC's argument. Accordingly, we find that the replacement of Raymond and Guzek as Plan Trustee and Administrator, and the appointments of InR, TD Bank, and Reliance Trust Company, accords Jeffrey the relief he demanded and renders those claims for relief moot. We therefore dismiss as moot Paragraph 8 of the SAC's Prayer for Relief to the extent that it seeks as equitable relief for the claims presented "(a) to have Raymond Perelman and Jason Guzek removed as trustee and administrator of the Pension Plan" and "(c) to have an independent trustee appointed for the Pension Plan."

B.    Indemnity Clauses

GRC also seeks to dismiss as moot Jeffrey's claim for declaratory relief to void Plan language purporting to indemnify trustees from liability for any breach of any obligation or duty owed under ERISA. GRC asserts that, as amended effective January 1, 2012, "no such language exists in the Plan." (GRC Mem. at 7.) Raymond and Guzek seek to dismiss the same claim for

failure to state a claim upon which declaratory relief may be granted.  They assert that the Plan's indemnification clause does not violate ERISA because the terms of the Plan provide that GRC, and not the Plan itself, is responsible for indemnifying the trustee for any liability from his own conduct.[4]

ERISA provides that "an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void against public policy."  ERISA § 410(a), 29 U.S.C. § 1110(a).  However, Congress also

---

[4] We note that these arguments are contradictory.  While Raymond and Guzek assert that there are legally permitted indemnification provisions, GRC asserts that there is no such provision at all.  GRC has not appended to its Motion any excerpt from the Plan documenting its contention, while Jeffrey and Raymond and Guzek have each appended identical excerpts documenting their contentions.  As permitted by Rule 12(c), we find from the appended documents that the Plan contains the following indemnity language, as amended effective January 26, 2012:

> The Employer shall indemnify and hold harmless the members of the Board of Directors and the Committee to whom any fiduciary responsibility with respect to the Plan is allocated or delegated, from and against all liabilities, costs and expenses incurred by such persons as a result of any act, or omission to act, in connection with the performance of their duties, responsibilities and obligations under the Plan and under ERISA, other than such liabilities, costs and expenses as may result from the bad faith or criminal acts of such person.

(Mem. in Support of Mot. for Judgment on the Pleading of Defendant Raymond G. Perelman and Jason Guzek, Ex. A; Pl. Mem. in Opposition, Ex. B.)  The Trust Agreement in effect during the time period in which the Revlon transaction occurred contains its own indemnification clause:

> In addition to any other limitation on liability set forth in the Agreement, the Trustee shall not be liable for any losses which may be incurred with respect to the Trust, except to the extent that such losses shall have been caused by its negligence, bad faith or willful misconduct, and the Trustee shall be fully protected for action taken or not taken pursuant to the provisions of this Agreement.

(Mem. in Support of Mot. for Judgment on the Pleading of Defendant Raymond G. Perelman and Jason Guzek, Ex. B; Pl. Mem. in Opposition, Ex. C.)

provided that nothing in that provision shall preclude "a plan from purchasing insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by such fiduciary." 29 U.S.C. § 1110(b)(1). Similarly, an ERISA employer may purchase insurance "to cover potential liability of one or more persons who serve in a fiduciary capacity with regard to an employee benefit plan." 29 U.S.C. § 1110(b)(3). The United States Depart of Labor has interpreted these sections:

> to permit indemnification agreements which do not relieve a fiduciary of responsibility or liability under part 4 of title I. Indemnification provisions which leave the fiduciary fully responsible and liable, but merely permit another party to satisfy any liability incurred by the fiduciary in the same manner as insurance purchased under section 410(b)(3), are therefore not void under section 410(a).

29 C.F.R. § 2509.75-4. "Indemnification of a plan fiduciary by (a) **an employer**, any of whose employees are covered by the plan" is an example of a permitted indemnification provision. Id. (emphasis added). A prohibited indemnification provision would be an "arrangement for indemnification of a fiduciary of an employee benefit plan **by the plan**. Such an arrangement would have the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations." Id. (emphasis added).

We find that the Plan's indemnification clause falls within the safe harbor provided by 29 C.F.R. § 2509.75-4. Because it permits the Trustee to seek indemnification only from the employer and does not permit indemnification by the Plan, it leaves the fiduciary fully responsible and liable, while permitting GRC to satisfy any liability incurred by a fiduciary in the same manner as insurance. (See Mem. in Support of Mot. for Judgment on the Pleading of Defendant Raymond G. Perelman and Jason Guzek, Ex. A; Pl. Mem. in Opposition, Ex. B.)

Jeffrey makes no argument that the Plan language violates ERISA § 410 or the implementing regulations. Accordingly, we conclude that Jeffrey's claim for a declaration that the Plan's indemnification clause is void fails to state a claim upon which relief may be granted. We therefore dismiss Paragraph 9 of the SAC's Prayer for Relief to the extent that it seeks as equitable relief for the claims presented that "those provisions of the Pension Plan [ ] which purport to relieve and/or to indemnify the Trustee from responsibility or liability for any obligation or duty owed under ERISA to be declared null and void as against public policy and violative of ERISA."

However, we cannot reach a similar conclusion with regard to the Trust Agreement's indemnification clause. While Raymond and Guzek argue that the Trust Agreement, like the Plan, indemnifies the trustee only with GRC's assets and not Plan assets, no such limitation is contained in the Trust Agreement. (See Mem. in Support of Mot. for Judgment on the Pleading of Defendant Raymond G. Perelman and Jason Guzek, Ex. B; Pl. Mem. in Opposition, Ex. C.) While the Plan specifies that the trustee may be indemnified only by the employer, the Trust Agreement is silent as to whether Plan assets may be used to indemnify a trustee. Accordingly, we conclude that the SAC has stated a claim upon which declaratory relief may be granted that this provision of the Trust Agreement is void as against public policy, and we deny the Motion to Dismiss to this extent.

C.    Permanent Disbarment of Raymond and Guzek as ERISA Trustees

Raymond and Guzek next argue that Jeffrey's claim seeking injunctive relief barring them from serving in the future as ERISA trustees must be dismissed on prudential standing grounds. The judicially created doctrine serves in part to "'limit access to the federal courts to those best suited to assert a particular claim.'" Freeman v. Corzine, 629 F.3d 146, 154 (3d Cir.

16

2010) (quoting <u>Joint Stock Soc'y v. UDV N. Am., Inc.</u>, 266 F.3d 164, 179 (3d Cir. 2001)).

Prudential standing,

> "require[s] that (1) a litigant assert his [or her] own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based."

<u>Freeman</u>, 629 F.3d at 154 (quoting <u>Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery Cty.</u>, 271 F.3d 140, 146 (3d Cir. 2001) (quoting <u>Davis v. Phila. Hous. Auth.</u>, 121 F.3d 92, 96 (3d Cir. 1997)) (emphasis omitted).  In the ERISA context, United States Court of Appeals for the Third Circuit has stated that the prudential standing analysis is "inextricably tied" to the statutory standing question, which generally asks whether a party qualifies as a "participant" or "beneficiary" under the provisions of ERISA.  <u>Miller v. Rite Aid Corp.</u>, 334 F.3d 335, 340–41 (3d Cir. 2003); <u>see</u> <u>Baldwin v. Univ. of Pittsburgh Med. Ctr.</u>, 636 F.3d 69, 74–75 (3d Cir. 2011).

The SAC contains no allegation that Jeffrey is a participant or beneficiary in any other ERISA plan, or that Raymond and Guzek are fiduciaries of any other ERISA plan.  Cases in which an individual has been permanently enjoined from service as an ERISA fiduciary are ordinarily brought by the Secretary of Labor under the authority provided by ERISA § 502(a)(3) or § 502(a)(5), 29 U.S.C. § 1132(a)(5).[5]  <u>See, e.g.</u>, <u>Solis v. Sonora Envtl., L.L.C.</u>, No. 10-675,

---

[5]The section provides:

> (a) Persons empowered to bring a civil action.  A civil action may be brought . . . (5) . . . by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter;

29 U.S.C. § 1132(a)(5).

2012 WL 5269211, at *6 (D. Ariz. Oct. 24, 2012) (permanently enjoining a trustee in a suit brought by the Secretary from providing any services — whether as a fiduciary or otherwise — directly or indirectly to any ERISA-covered plan); Solis v. Couturier, No. 08-2732, 2009 WL 1748724, *6-7 and n.36 (E.D. Cal. June 19, 2009) (holding that ERISA permits the Secretary to obtain a permanent injunction to prevent a fiduciary from managing an ERISA plan in the future and collecting cases); Reich v. Lancaster, 55 F.3d 1034, 1042, 1054 (5th Cir. 1995) (affirming the district court's permanent injunction in a suit brought by the Secretary enjoining ERISA plan fiduciaries from administering ERISA plans in the future because they received unreasonable compensation without disclosing their charged premiums to beneficiaries); Whitfield v. Tomasso, 682 F. Supp. 1287, 1306–07 (E.D.N.Y. 1988) (granting the Secretary an injunction preventing defendants from serving as fiduciaries or service providers to any ERISA plan, either permanently or for a ten-year period).  In only one case brought by a participant or beneficiary of a defrauded plan has a court imposed a permanent injunction on future service as an ERISA trustee.  See Beck v. Levering, 947 F.2d 639, 641 (2d Cir. 1991) (rejecting "the argument that ERISA fiduciaries and their associates must be allowed to loot a second pension plan before an injunction may be issued.   ERISA imposes a high standard on fiduciaries, and serious misconduct that violates statutory obligations is sufficient grounds for a permanent injunction."); cf. Liss v. Smith,  991 F. Supp. 278, 312-14 (S.D.N.Y. 1998) (stating that, in a suit brought by a private party, "appropriate relief" may include permanent injunctive relief prohibiting defendants from serving as fiduciaries or service providers to any ERISA plan, but not actually awarding such relief).  In Beck, there is no indication that the issue of prudential standing of the private party to seek to enjoin the fiduciary from serving other plans was ever raised.

Jeffrey does not directly address Defendants' prudential standing argument. He does not discuss how, in seeking to bar Defendants from serving as fiduciaries for other plans, he is asserting his own legal interests, rather than those of a hypothetical beneficiary of some other ERISA plan. Given that the overwhelming majority of cases in which this type of injunctive relief was awarded were brought by the Secretary, we find that Jeffrey is not "the litigant best suited" to assert the claim that Raymond and Guzek should never again serve as an ERISA fiduciary. Freeman, 629 F.3d at 154. We therefore dismiss Paragraph 8 of the SAC's Prayer for Relief to the extent that it seeks as equitable relief for the claims presented "(b) to have Raymond Perelman and Jason Guzek permanently enjoined from ever serving as a fiduciary with regard to any employee benefit plan subject to ERISA."[6]

   D.   Audit of the Plan

GRC argues that Jeffrey's claim seeking an audit of the Plan should be dismissed because an independent trustee has now been appointed.[7] It contends that the Plan is audited every year by its own accounting firm and that "Plaintiff, as well as Defendants, should step back and allow this independent Trustee to fulfill its obligations without outside interference." (GRC Mem. at 7.) It also suggests that, since Jeffrey has received the "main equitable relief requested," i.e., Raymond's resignation, that GRC is entitled to dismissal of all claims against it. (Id.)

---

[6]GRC also seeks dismissal of this provision of the SAC's Prayer for Relief, arguing that it does not implicate GRC. Jeffrey makes no argument that the allegations of the SAC state a claim for this form of relief against GRC. Accordingly, we also grant GRC's Motion to Dismiss this provision.

[7]Raymond and Guzek do not make a specific argument in their Motion attacking the audit claim. They do, however, ask that all of Jeffrey's remaining claims be dismissed "[f]or the reasons set forth in the Motion for Judgment on the Pleadings of General Refractories Company. . . ." (Def. Mem. at 1.) Accordingly, we consider the validity of the audit claim for all Defendants.

GRC cites no authority to support its contention that Jeffrey's entitlement to the equitable relief of an audit has been mooted or otherwise fails to state a claim upon which relief may be granted because another form of injunctive relief he seeks, Raymond's resignation, has been satisfied. While we find that Jeffrey's request for the equitable remedy of an audit of the Plan must go forward, we also find that the scope of the relief requested is overbroad. Jeffrey seeks an "audit of the Pension Plan for Plan Years 2002 through 2010 to ascertain the veracity of information contained in Forms 5500 for Plan Years 2002-2010." (SAC Prayer for Relief Clause ¶ 8.) Because Forms 5500 provide yearly financial information about an ERISA plan to the Department of Labor, an audit to test the veracity of the information supplied ostensibly seeks to determine the amount for which Raymond, Ronald or Guzek might be liable for restitution or disgorgement traceable to the prohibited party-in-interest transactions. Thus, an audit of this scope relates only to the monetary forms of injunctive relief we dismissed from the SAC in our August Opinion, as well as the futile legal claims for money damages we find cannot be permitted to go forward in the TAC. For the same reason that a defined benefit plan participant lacks standing to assert claims for money damages due to the misconduct of plan administrators where the misconduct will not affect his entitlement to benefits, we must also conclude that such a participant has no standing to seek such an extensive audit of the plan's past financial condition. Absent plausible allegations of a risk of complete default, a participant's legal interest is limited to ascertaining that the Plan is currently funded to adequately meet is financial obligations. Accordingly, we find that the scope of Jeffrey's equitable right to an audit must be limited to a determination of whether the Plan is currently underfunded and we grant GRC's Motion to the extent that it seeks to limit the audit claim to a determination of the Plan's current ability to meet is financial obligations.

## V.    CONCLUSION

We deny Jeffrey's Motion for Leave to File a Third Amended Complaint.  Jeffrey's "information and belief" allegations that the diminution in the value of the Plan assets jeopardizes its ability to provide continued pension benefits to its participants and beneficiaries are too speculative to provide him standing to pursue § 502(a)(2) claims.  Jeffrey makes no plausible allegation that the scope of the losses that the Plan suffered places it at risk of complete default, and he makes no plausible allegation that GRC, the Plan sponsor, is financially unable to adequately fund the Plan so that it will be unable to meet its future obligations to pay all vested benefits to all vested beneficiaries.  Accordingly, we conclude that the proposed amendment to add legal claims for money damages under § 502(a)(2) is futile.

On the remaining claims of the SAC, we dismiss Jeffrey's claims for equitable relief seeking the removal of Raymond and Guzek as Plan Trustee and Administrator respectively and the appointment of an independent trustee on grounds that they are moot.  We dismiss for failure to state a claim upon which relief may be granted Jeffrey's claim seeking a declaration that the Plan's indemnification clause is void, since that clause falls within the safe harbor provided by 29 C.F.R. § 2509.75-4.  However, we decline to reach a similar conclusion with regard to the Trust Agreement's indemnification clause.  We also dismiss on prudential standing grounds Jeffrey's claim for injunctive relief seeking to bar Raymond and Guzek from serving in the future as ERISA fiduciaries because Jeffrey has not shown that he is asserting his own legal interests.   Finally, we dismiss Jeffrey's audit claim in part to the extent that it seeks any audit

beyond a determination of the Plan's current ability to meet is financial obligations.

An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

JOHN R. PADOVA, J.