IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY E. PERELMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RAYMOND G. PERELMAN, JASON GUZEK, and GENERAL REFRACTORIES COMPANY | : : : | NO. 10-5622 |

**MEMORANDUM**

**PADOVA, J.**                                                                                          **April 14, 2014**

Presently before the Court is a Motion for Attorney's Fees, Costs and Expenses by Plaintiff Jeffrey Perelman. (Doc. No. 163.) For the following reasons, the Motion is denied.

**I.     BACKGROUND**

On February 18, 2014, we entered summary judgment in favor of Defendants General Refractories Company ("GRC"), Raymond Perelman ("Raymond"), Jason Guzek ("Guzek"), and Reliance Trust Company ("Reliance") on the remaining claims brought by Plaintiff Jeffrey Perelman ("Jeffrey"). See Perelman v. Perelman, Civ. A. No. 10-5622, 2014 WL 616071 (E.D. Pa. Feb. 18, 2014) ("Summary Judgment Opinion"). In his Second Amended Complaint ("SAC"), Jeffrey had sought various forms of monetary and equitable relief under the Employee Retirement Income and Security Act ("ERISA") from Raymond, Guzek, GRC and Ronald Perelman ("Ronald"), including an "audit of the Pension Plan for Plan Years 2002 through 2010 to ascertain the veracity of information contained in Forms 5500 for Plan Years 2002-2010," and an order declaring the indemnification provisions of the Plan document and trust agreement null and void as against public policy. (SAC Prayer for Relief.)

In our earlier decision on Defendants' motions testing the sufficiency of the SAC, and in opposition to Jeffrey's Motion for leave to file a Third Amended Complaint ("TAC"), we

significantly limited the claims upon which Jeffrey could proceed. We held that, in his capacity as a plan participant, Jeffrey did not have standing to seek monetary forms of equitable relief in the forms of disgorgement and restitution, and dismissed in their entirety the claims against Ronald, which sought only money damages. We dismissed as moot Jeffrey's claims for equitable relief seeking the removal of Raymond and Guzek, as trustee and administrator respectively of the Plan, and the appointment of an independent trustee because Raymond and Guzek had already resigned, and Reliance had been appointed as the Plan's new trustee. We also dismissed on prudential standing grounds Jeffrey's claim for injunctive relief seeking to bar Raymond and Guzek from serving in the future as ERISA fiduciaries because Jeffrey did not show that he was asserting his own legal interests. See Perelman v. Perelman, 919 F. Supp. 2d 512 (E.D. Pa. 2013). We limited Jeffrey's potential recovery in the lawsuit to two forms of equitable relief, along with the possible award of attorneys' fees: (1) an audit, limited to determining the Plan's current ability to meet its financial obligations; and (2) an order declaring the indemnification provision of the Plan's trust agreement null and void as against public policy. Id. at 526.

In our summary judgment decision, we determined that Jeffrey was not entitled to either form of relief that was still undetermined. On his audit claim, we held that he had not met his summary judgment burden to demonstrate a genuine issue of material fact on the issue of whether he was entitled to the equitable relief of an audit. Summary Judgment Opinion, 2014 WL 616071, at *9. The summary judgment record demonstrated that the Plan was fully funded under congressionally permitted funding rules, which GRC, as plan sponsor, had elected to use. Id., at *8. Because there was no genuine dispute that the Plan met its current obligations under congressionally mandated funding rules, we held that Jeffrey's assertions that the Plan suffered a

shortfall and that the fiduciaries could "escape" responsibility for reimbursing the Plan, failed to create factual issues sufficient to establish the existence of an element essential to his audit claim. Id. On his indemnification claim, we concluded that, because Jeffrey could not recover monetary forms of equitable relief, it followed that the prior indemnification clause — upon which this claim was grounded — could never be exercised by Defendants to recoup any monetary recovery by Jeffrey. Id., at *10. Accordingly, we determined that the question of whether the clause was void against public policy failed to state a justiciable "live" claim. Id. In short, we awarded Jeffrey no judicial relief on any claim that he sought to litigate. Id., at *11.

## II.     THE ERISA ATTORNEY FEE PROVISION

ERISA Section 502(g)(1), 29 U.S.C. § 1132(g)(1), allows for a grant of attorney's fees in the Court's discretion under certain circumstances. The statute provides:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions.
>
> > (1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). Accordingly, a court, in its discretion, may award a party reasonable attorney's fees and costs, but the statute does not mandate such an award. Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983).

In Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242 (2010), the United States Supreme Court held that the ERISA fee statute does not require that one seeking fees be a "prevailing party." Id. at 251-55. Earlier, the Court had decided Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598 (2001), in which it determined that to be a "prevailing party" under fee shifting statutes employing that standard, the party must have achieved a "judicially sanctioned" change in the legal relationship between itself and the

defendant, and must have achieved some of the benefit the party sought in bringing the lawsuit. Id. at 605. The Buckhannon Court held that a "voluntary change in conduct . . . lacks the necessary judicial imprimatur on the change."[1] Id. at 598-99.

In Hardt, the Court determined that the lower courts had improperly applied Buckhannon's prevailing party standard to an ERISA case because the prevailing party requirement is not contained within the text of ERISA's attorney's fee statute. Id. at 252. Specifically, the Supreme Court rejected the Fourth Circuit's reliance on Buckhannon, noting that the statutes analyzed in that case — the Americans with Disabilities Act and the Fair Housing Amendments Act — had provisions awarding attorney's fees to prevailing parties only. See id. at 253-54. Rather, the Court held that the proper standard for finding a party eligible for attorney's fees in ERISA cases is the "some degree of success on the merits" standard enunciated in Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983). Id. at 254. In Hardt, the Supreme Court reiterated that the Ruckelshaus standard is not satisfied where a claimant achieves only "'trivial success on the merits' or a 'purely procedural victor[y],' but [a litigant does satisfy the test if] the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was "substantial" or occurred on a "central issue."'" Id. at 255 (quoting Ruckelshaus, 463 U.S. at 688, n.9).

---

[1] The Third Circuit has summarized this prevailing party rule as follows: "a plaintiff does not become a 'prevailing party' solely because his lawsuit causes a voluntary change in the defendant's conduct." People Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 232 (3d Cir. 2008). "Rather, the change in the parties' legal relationship must be the product of judicial action." Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 228 (3d Cir. 2011) (*en banc*) (citing Buckhannon, 532 U.S. at 605-06).

Accordingly, courts assess the merits of an ERISA motion for attorney's fees pursuant to a three-step process. First, a court determines whether the claimant has achieved "some degree of success on the merits." Hardt at 255. Second, a court determines whether an award of attorney's fees is appropriate by examining five specific factors, in this circuit known as the "Ursic" factors. Id. at 249; Ursic, 719 F.3d at 673. And third, if the Ursic factors suggest that awarding attorney's fees is appropriate, then a court should "review the attorneys' fees and costs requested and limit them to a reasonable amount." Id.

The Ursic factors, which comprise the second part of the three part process, are as follows: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing party would deter others under similar circumstances; (4) whether the party requesting attorney's fees seeks to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the losing party's position. Ursic, 719 F.2d at 673. The Ursic factors are not a rigid test; rather, they provide a useful framework for courts to analyze a motion for attorney's fees. Fields v. Thompson Printing Co., 363 F.3d 259, 275 (3d Cir. 2004). Further, "no one of these factors is decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address" in applying ERISA § 1132(g)(1). Veira v. Life Ins. Co. of No. Am., Civ. A. No. 09-3574, 2013 WL 3199091, at *2 (E.D. Pa. June 25, 2013).

IV.     ANALYSIS

    a.     <u>Success on the merits.</u>

Jeffrey argues that he is entitled to attorney's fees and costs because he has achieved a level of success in the lawsuit that satisfies <u>Hardt</u>.[2]  Specifically, he cites (1) his allegations that the Forms 5500 filed by the Plan contained material misrepresentations, and the fact that Defendants admitted those misrepresentations when they filed an amended Form 5500 for 2010; (2) Raymond and Guzek resigned as fiduciaries and the Plan appointed a new trustee and investment advisor; (3) the Plan Sponsor amended the Plan documents to remove the offending indemnity provisions.  He argues that these changes "were all driven by the litigation — in an effort to resolve Plaintiff's claims." (Pl. Mem. at 4.)  He argues that, where a plaintiff's claims have withstood a motion to dismiss, and brought about a voluntary change in the defendants' conduct, the plaintiff is entitled to fees and costs under a "catalyst theory."  (<u>Id.</u>, at 4-5 (citing <u>Scarangella v. Gr. Health, Inc.</u>, 731 F.3d 146, 155 (2d Cir. 2013) (applying "catalyst theory" to the question of whether ERISA plaintiff is entitled to fees))).

Defendants argue that Jeffrey is not entitled to fees because he failed to achieve judicial relief on his claims.  They assert that their own voluntary actions —  the resignations, the appointment of new fiduciaries, and the amendment of the indemnity provision — constitute only "trivial" success on Jeffrey's claims that does not rise to the level required by <u>Hardt</u>.  They also reject Jeffrey's reliance on the Second Circuit's decision in <u>Scarangella</u>, arguing that the "catalyst theory" has been rejected in an ERISA decision from the District of New Jersey.  (Def.

---

[2] The <u>Hardt</u> analysis applies to both attorney's fees and costs.  <u>See</u> <u>Templin v. Independence Blue Cross</u>, Civ. A. No. 09-4092, 2013 WL 6050667, at *6 n.5 (E.D. PA. Nov. 14, 2013) (citing <u>Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.</u>, 898 F. Supp. 2d 883, 895 n.17 (D. Md. 2012) (stating "ERISA dictates that costs be analyzed under the same standard as attorney's fees . . . .").

Mem. at 4 (citing Boyle v. Int'l Broth. of Teamsters Local 863 Welfare Fund, Civ. A. No. 11-3203, 2012 WL 6005657, at *10 (D.N.J. Nov. 30, 2012))).

While the Supreme Court in Hardt made clear that trivial success or procedural victories are not sufficient to establish eligibility for attorney's fees under ERISA § 1132(g)(1), it did not resolve what a party must achieve or obtain to demonstrate "some success on the merits." See Templin, 2013 WL 6050667, at *6 (citing Scarangella, 731 F.3d at 152). "Thus, district courts have been left to determine what constitutes success on the merits in each individual case." Id. Jeffrey essentially claims "success" because two of his claims survived the pleadings stage, which he asserts catalyzed Defendants to voluntarily act.

In Scarangella, the Second Circuit discussed what "the Supreme Court did not resolve in Hardt: what must a party achieve or obtain to show some degree of success on the merits" of an ERISA claim. Id., 731 F.3d at 152. The court held that obtaining a favorable court judgment is not required to satisfy the threshold for awarding fees. Id. at 155 ("[w]hile we are mindful of the Supreme Court's admonition that we should avoid a "lengthy inquir[y] into the question [of] whether a particular party's success was 'substantial' or occurred on a 'central issue,'" [Hardt] at 2158 (alterations in original), we are also hesitant to create an extra-statutory rule requiring success be obtained only by court order"). Because Hardt rejected the prevailing party standard for ERISA, the Scarangella Court held "the catalyst theory remains a viable means of showing that judicial action in some way spurred one party to provide another party with relief, potentially amounting to success on the merits." Id. (citing Hardt, at 255 (applying the test of Ruckelshaus, 463 U.S. at 694)). The Second Circuit reasoned that,

> Certainly, a party that obtains relief due to the voluntary conduct of another party after minimal litigation in the district court is unlikely to succeed in demonstrating that the impetus for the relief was some action by the court related to the merits of the case. Where, however, the parties already have received a tentative analysis

of their legal claims within the context of summary judgment, a party may be able to show that the court's discussion of the pending claims resulted in the party obtaining relief. This is in line with the underlying policy considerations of ERISA that we are to construe broadly.

Id.

Both before and after Buckhannon, the Third Circuit had applied the catalyst theory in fee petitions involving the "prevailing party" standard. See Wheeler v. Towanda Area School Dist., 950 F.2d 128, 132 (3d Cir. 1991) (holding that under the Education of the Handicapped Act fees could be awarded even though the litigation did not result in a favorable judgment, where "the pressure of the lawsuit was a material contributing factor in bringing about extrajudicial relief"); D.F. v. Collingswood Borough Bd. Of Educ., 694 F.3d 488, 501 (3d Cir. 2012) (applying catalyst theory to claim under Individuals with Disabilities in Education Act); but see Singer Mgmt., 650 F.3d at 228 (*en banc*) (holding that "'a plaintiff does not become a "prevailing party" solely because his lawsuit causes a voluntary change in the defendant's conduct.' Rather, the change in the parties' legal relationship must be the product of judicial action.'" (citing Buckhannon, 532 U.S. at 605-06)).

The Third Circuit has not yet had occasion to determine whether the catalyst theory is applicable under Hardt's construction of the ERISA attorney's fee provision. One in-Circuit district court decision cited by Defendants has concluded that ERISA does not permit fee shifting under the catalyst theory. Boyle, 2012 WL 6005657, at *10. The Boyle court reasoned, in a decision predating the Second Circuit decision in Scarangella, that,

> In Hardt, supra, the Supreme Court held that in order to win attorneys' fees, "a fees claimant must show some degree of success *on the merits*." . . . The Supreme Court's requirement that plaintiffs show some success "on the merits" seems to presume, at a minimum, that this success be before the court. Such an interpretation is also supported by the Supreme Court's admonition that the "some success on the merits" standard is not satisfied by "trivial success on the merits or a purely procedural victory." . . . Moreover, in Ruckelshaus v. Sierra Club, the Supreme Court stated that the "some degree of success" standard "was meant to

> expand the class of parties eligible for fee awards from prevailing parties to partially prevailing parties — parties achieving some success, even if not major success." . . . Another district court to address this issue has correctly reasoned that the "some degree of success" standard "is more lenient with respect to *how much* a party must prevail" but that "it is difficult to see why it would change the *type* of result that qualifies as success, that is, whether the plaintiff achieves relief through a court order or voluntary cessation of conduct." . . . This Court is persuaded that where the only success counsel can point to is outside the courtroom, there has not been even partial success "on the merits," . . . and there can be no fee shifting under § 1132(g)(1).

Boyle, 2012 WL 6005657, at *10 (internal citations omitted). We cannot agree that this analysis captures the distinction Hardt drew between statutes that require a prevailing party and statutes like ERISA that do not impose the requirement. Hardt itself provides the "how much success" standard for ERISA fee recoveries — the "some degree of success on the merits" standard from Ruckelshaus — without requiring that this "type of result" be a judicial decision. This is evident from the fact that Hardt rejected the Buckhannon standard in favor of the Ruckelshaus standard. Accordingly, we agree with the reasoning of the Second Circuit in Scarangella and find that the catalyst theory can apply to an ERISA fee award determination.

Applying the catalyst theory in conjunction with the Hardt standard, we would award fees where a plaintiff's litigation efforts resulted in a voluntary, non-trivial, more than procedural victory, apparent to the Court without the need to conduct a lengthy inquiry into whether that success was substantial or occurred on a central issue. We find that Jeffrey has not met this test. First, Jeffrey's lack of standing to bring his most substantial claims, and the failure of proof on the two relatively minor claims upon which he was entitled to proceed past the pleadings stage, eliminated his chance to present his proof of Defendants' alleged improper conduct to a fact-finder. Thus, to show that his litigation efforts induced Defendants into taking voluntary actions, Jeffrey would have to essentially prove his entire case to the Court in his fee petition, which violates Hardt's admonition that the level of success must be apparent without the need for a

9

lengthy inquiry.  The fact that we would have to conduct a mini trial to determine whether he satisfies the catalyst test is itself grounds to conclude that Jeffrey cannot satisfy the holding of Hardt.

Examining the results facially, we find that Defendants' voluntary actions on some of Jeffrey's claims for equitable relief is not an outcome that can fairly be called "some success on the merits."  Jeffrey's only success in inducing voluntary actions on a claim he had standing to litigate was Raymond's voluntary resignation as a fiduciary of the Plan.  However, Raymond admitted no wrongdoing in tendering his resignation, Jeffrey succeeded on this claim only at the pleadings stage, and Jeffrey failed on prudential standing grounds in his attempt to impose the more serious sanction of having Raymond barred for life from serving as an ERISA trustee.[3] Defendants amended Form 5500 for 2010, and Raymond filed the Voluntary Fiduciary Correction Program form, but in doing so, no Defendant ever expressly admitted they breached a fiduciary duty; therefore this "success" cannot satisfy the Hardt test.  Also, examining this result from a facial standpoint, it must be remembered that inducing this type of action was not part of the equitable relief Jeffrey sought in any version of his pleadings in the litigation.  (See Doc. No. 1 (Compl., Prayer for Relief Clause) at 30-31; Doc. No. 40 (Second Am. Compl., Prayer for Relief Clause) at 58-60; Doc. No. 109-2 (Proposed Third Am. Compl., Prayer for Relief Clause) at 77-82); Doc. No. 156-3 (Proposed Suppl. Third Am. Compl., Prayer for Relief Clause) at 51-52.)  Accordingly, we find that Jeffrey cannot meet the Hardt test through a catalyst theory or otherwise.

---

[3] Defendant Guzek also resigned as trustee; but he also resigned as an officer and left the employment of the Plan Sponsor.

      b.    <u>The Ursic Factors</u>

In the alternative, we also find that the <u>Ursic</u> factors, on balance, weigh against an award of fees.

      1.    <u>Degree of Defendant's culpability or bad faith</u>

This factor weighs against awarding fees. We have found that Jeffrey failed to create a triable issue on the two claims he had standing to pursue. Jeffrey argues that Defendants' acts and omissions — namely engaging in party-in-interest transactions, and failing to disclose them; denying they did anything wrong, but then filing the VFCP application; and Raymond's resignation — weigh in favor of an award. Unfortunately, whether Defendants engaged in improper transactions is entirely speculative because Jeffrey did not have standing to assert such a claim, and the parties that might have had standing, the Plan and the Plan Sponsor, did not bring such a claim. Also, Raymond's submission to the Department of Labor expressly did not admit liability, and neither did his resignation. Finally, the fact that the Plan remains fully funded weighs against a finding of bad faith conduct vis-à-vis the Plan.

      2.    <u>Defendants' ability to satisfy an award of attorney's fees</u>

Defendants do not deny they have the ability to satisfy an award. (Def. Mem. at 11.) This factor weighs in favor of awarding fees.

      3.    <u>Deterrence to others</u>

Jeffrey argues that an award would deter future plan trustees from engaging in prohibited transactions. (Pl. Mem. at 7-8.) Defendants argue that an award would have no deterring effect on Raymond or GRC because they have already ceded control of the Plan's assets to third parties. We find this factor weighs somewhat in favor of granting an award. Contrary to

Defendants' argument, the factor focuses on deterrence to others, not on whether the parties in the lawsuit will be deterred in the future.

    4.    Whether the party requesting attorney's fees seeks to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant <u>legal question regarding ERISA itself</u>

Jeffrey makes no argument on this factor. This factor weighs against an award. Clearly any award would not benefit participants and beneficiaries, since there was no recovery for the Plan.

    5.    <u>Relative merits of the losing party's position</u>

Again, Jeffrey makes no argument on his factor. We ultimately agreed with Defendants' positions on almost every issue. The relative merits of their positions were high. This factor weighs significantly against an award.

Applying these factors, we find that they weigh against granting an award to Jeffrey. Since we have determined that Jeffrey failed to satisfy the <u>Hardt</u> and catalyst theory test, and have determined that the <u>Ursic</u> factors weigh against awarding attorney's fees, we do not need to reach the question of whether the amount requested for attorney's fees and costs is reasonable.

An appropriate order follows.

    BY THE COURT:

    /s/John R. Padova

    _____
    John R. Padova